[Cite as *Murphy v. Murphy*, 2014-Ohio-656.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| BRIAN DAVID MURPHY, | : | APPEAL NO. C-130229 |
| | | TRIAL NO. DR0503122 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| AMY CATHERINE MURPHY | : | |
| n.k.a. AMY C. RUDOLPH, | | |
| | : | |
| Defendant-Appellant. | | |

Civil Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is:   Affirmed.

Date of Judgment Entry on Appeal:  February 26, 2014

*Timothy J. Deardorf*, for Plaintiff-Appellee,

*Moskowitz & Moskowitz, LLC,* and *James H. Moskowitz*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} Defendant-appellant Amy Catherine Murphy, n.k.a. Amy Rudolph, appeals the trial court's judgment, which decreased her ex-husband, defendant-appellee Brian Murphy's child-support obligation to zero for the years 2008 to 2012, and ordered her to pay child support for those years. On appeal, she raises three assignments of error. First, she argues that the trial court erred by addressing and ruling upon issues that had been previously resolved in a June 30, 2009 entry on objections. Next, she argues that the trial court erred in calculating her and her ex-husband's incomes from 2008-2012. Finally, she argues that the trial court erred by ordering her to pay child support from 2008 to the present, in violation of her due-process rights. Finding none of her assignments of error meritorious, we affirm the trial court's judgment.

### *Trial Court Proceedings*

{¶2} Rudolph and Murphy are the parents of two minor children, whom they parent pursuant to a decree of shared parenting, which was entered into, along with their decree of divorce, on March 1, 2007. The shared-parenting plan, which was incorporated into the shared-parenting decree, provides that "regardless of where the children are physically located or with whom the children are residing at that particular point in time, each parent shall be the residential parent and legal custodian for the children." The plan further provides that shared parenting "includes, but is not limited to the physical living arrangements, child support obligations, provisions for medical and dental care, school placement, and a specific schedule of shared parenting time for each parent."

{¶3} At the time of the parties' decree, Murphy was an employee of his own business, Ray Murphy Homes. He also had an ownership interest in Gilchrest

2

Farms, an entity that developed property and sold residential lots. On the child-support worksheet attached to the shared-parenting plan, Murphy's income was listed as $120,000. Rudolph's income was listed as $52,000. On the support worksheet, Murphy was designated the obligor and was responsible for paying $1,000 per month for child support and for providing health insurance for the children. Under the terms of the decree of divorce, Murphy was ordered to pay Rudolph $1000 a month in spousal support.

{¶4} On October 22, 2008, Murphy filed a motion for modification of his spousal- and child-support obligations, seeking to decrease his obligations due to a substantial change in his financial circumstances. On May 1, 2009, the magistrate entered a decision granting Murphy's motion to modify child support. In that decision, the magistrate found Murphy's annual income to be $19,607. Both Murphy and Rudolph filed timely objections to the magistrate's decision.

{¶5} On June 30, 2009, the trial court overruled Murphy's objections and sustained Rudolph's objections. It calculated Murphy's income to be $140,166 for 2006, $148,657 for 2007, and $87,434.13 for 2008. The trial court averaged his income for those three years, arriving at a figure of $125,387, and remanded the matter to the magistrate to recalculate Murphy's child-support obligation in accordance with its entry. It also calculated Rudolph's 2008 income to be $43,084, and ordered the magistrate upon remand to average Rudolph's 2006, 2007, and 2008 income.

{¶6} On July 22, 2009, the magistrate recalculated Murphy's child support for 2008, based on Murphy's averaged income of $125,385.71 and Rudolph's averaged income of $41,341, in accordance with the trial court's remand order. On August 5, 2009, Murphy filed objections. He argued that the averaging of his income

was improper under the circumstances, and that the magistrate had erred in calculating Rudolph's income when her 2008 tax return was not in evidence. Murphy then filed a motion to compel Rudolph's production of her 2008 and amended 2008 tax returns. On September 24, 2009, the trial court heard arguments on the objections, taking portions of the argument under submission, and ordered Rudolph to provide Murphy with a copy of her original and amended 2008 tax returns.

{¶7} On October 13, 2009, the trial court concluded that it had erred in instructing the magistrate to average Murphy's income for the years 2006, 2007, and 2008. As a result, it remanded the matter to the magistrate with instructions "to calculate child support based upon [Murphy]'s income for year 2008" and to permit Rudolph's "attorney to question Murphy as to any other income he may have received for that year alone, and then use that figure while calculating his present child support order." The trial court subsequently entered an amended entry, correcting a clerical error in the title of the October 13, 2009 entry.

{¶8} On March 16, 2010, the magistrate issued a decision, stating that a fair review of the trial court's remands, and the magistrate's decisions to which they applied, required the magistrate to conduct a de novo hearing on Murphy's motion to modify child support for the following reasons: (1) Rudolph's 2008 amended tax return likely included evidence the magistrate had not yet heard and may have an impact on the child-support calculation; and (2) "ordering Murphy to testify regarding his income for the tax year 2008 if so requested by Rudolph's counsel opens the door to questioning of Murphy by Murphy's counsel, and by the magistrate." The magistrate noted that this additional testimony could elicit evidence the magistrate had not yet heard and could be relevant to Murphy's motion

to modify child support. As a result, the magistrate set the matter for a de novo hearing on Murphy's motion to modify child support.

{¶9} Rudolph filed objections to the magistrate's decision on March 26, 2010. She argued that because the trial court had already determined the parties' 2008 income in its June 30, 2009 entry, the trial court should not relitigate the matter. On May 28, 2010, the trial court overruled Rudolph's objection and remanded the matter to the magistrate to hold a de novo hearing to determine the parties' 2008 incomes for the purpose of ruling on Murphy's October 22, 2008 motion to modify child support. The trial court further provided that "the magistrate shall not average [Murphy's] income, but may, if deemed appropriate, average [Rudolph's] income over a reasonable number of years."

{¶10} Rudolph appealed the trial court's May 28, 2010 entry, but this court dismissed her appeal. In our judgment entry, we acknowledged that the trial court had changed its mind on the proper way to determine the parties' income. But we concluded that because the trial court had never specifically decided the issue of the amount of child support, the order Rudolph had appealed from was not a final order as defined in R.C. 2505.02.

{¶11} Following the dismissal of Rudolph's appeal, the magistrate conducted a series of de novo hearings on the child-support issue that spanned roughly eight months. At the first hearing on April 27, 2012, counsel for both Rudolph and Murphy agreed that because Murphy's October 2008 motion to modify child support had been pending for more than four years without resolution, the magistrate would determine the parties' child-support obligations on a year-by-year basis, beginning with the date of Murphy's filing.

{¶12} During the hearings, both Murphy and Rudolph testified as to their incomes for the years 2008, 2009, 2010, 2011, and 2012, and presented documentary evidence, including their tax returns. Murphy testified that by mid-2008 his annual income had been reduced substantially because of a downturn in the real-estate market. The bank that had provided financing to his company, Ray Murphy Homes, had halted its line of credit and the company was no longer able to borrow money to finance its operations. At the time he had filed his motion to decrease child support, he was no longer an employee of Ray Murphy Homes and had stopped receiving wages from the company. Instead, he had received periodic payments toward the more than $530,000 he had loaned to Ray Murphy Homes, which had since ceased operating.

{¶13} Murphy testified that he had invested the payments in other businesses he had attempted to start with the help of his family members so that he could earn additional income. Some of those businesses had generated income while others had only generated losses. Murphy testified that he had additionally collected unemployment-compensation benefits. Despite his declining finances, Murphy continued to pay Rudolph $1,000 monthly through February 2012 in spousal support, $1,000 monthly in child support, and the health insurance premiums for the children. Murphy testified that he had included all of his income from every source on his tax returns. He further testified that the parties' son had moved from Rudolph's home in October 1, 2011, to live with him on a full-time basis and their daughter had moved from Rudolph's home in July 2012, to live with him on a full-time basis, and that Rudolph had only seen their son a few times since he had moved in with him.

{¶14} Rudolph testified that since the divorce she had worked part-time flexible jobs so that she could take the parties' children to their doctors' appointments and the parties' daughter, who had cerebral palsy, to numerous therapy appointments. She testified her income was primarily comprised of spousal support and the interest and dividends from her investment accounts. Although Rudolph could not recall the exact amounts in her investment accounts, there was evidence before the trial court, that they totaled more than one million dollars. She testified that in 2008, 2010, and 2012, she had taken distributions from her investment accounts and had rolled the funds over into a Roth IRA. She further testified that in 2012 she began working 28 to 35 hours per week at Play it Again Sports, earning $9.00 an hour.

{¶15} On January 22, 2013, the magistrate filed a lengthy decision with findings of fact and conclusions of law, which detailed the parties' income from October 2008 to 2012. The magistrate modified Murphy's child-support obligation to zero effective October 22, 2008, through December 31, 2008, and also set his child-support obligation at zero for 2009, 2010, 2011, and 2012. The magistrate ordered Rudolph to pay child support of $1,324.68 per month effective October 22, 2008, through December 31, 2008, and set her monthly child-support obligation at $706.90 for 2009, $1374.77 for 2010, $927.55 for 2011, and $1082.97 for 2012.

{¶16} Rudolph and Murphy filed timely objections. Pertinent to this appeal, Rudolph objected to several of the magistrate's findings relating to her and Murphy's incomes for 2008, 2009, 2010, 2011, and 2012. She also objected to the magistrate's order requiring her to pay child support, arguing that the magistrate's failure to provide her with notice that she could be the child-support obligor had violated her due-process rights. The trial court overruled in part and sustained in

part Rudolph's objections as to the magistrate's calculations of her and Murphy's incomes. It overruled her objection that the magistrate had violated her due-process rights by requiring her to pay child support.

{¶17} The trial court modified Murphy's child-support obligation to zero effective October 22, 2008, through December 31, 2008, and also set his child-support obligation at zero for 2009, 2010, 2011, and 2012. It set Rudolph's monthly child-support obligation at $1,330.32 effective October 22, 2008, through December 31, 2008, at $920.58 for 2009, $1384.80 for 2010, $1091.86 for 2011, and $832.15 for 2012. The trial court ordered Rudolph to make a lump-sum payment of at least $20,000 to Murphy within 30 days of the order as partial repayment of the overage, and to pay Murphy at least $500 per month toward the remaining overpayment until he has been repaid in full. Rudolph has timely appealed, raising three assignments of error.

### *The Trial Court's June 30, 2009 Order*

{¶18} In her first assignment of error, Rudolph argues the trial court erred when it addressed and ruled upon issues that had previously been resolved by the trial court's June 30, 2009 entry on objections. She argues that the June 30, 2009 entry on objections conclusively determined the issue of the parties' 2008 incomes. Thus, the trial court could not review the matter further.

{¶19} She alternatively argues that even if the trial court could readdress the parties' income for child-support purposes, it was inappropriate for the court to hold a de novo hearing where the trial court had already determined the matter and where its October 13, 2009 entry and amended entry did not specifically require such a hearing. We disagree with both arguments.

{¶20}   A trial court always has the inherent power to correct prior errors or reconsider an interlocutory order entered in the same case.  *See, e.g., State ex rel. Dannaher v. Crawford*, 78 Ohio St.3d 391, 395, 678 N.E.2d 549 (1997); *see also Culp v. Olukoga*, 4th Dist. Scioto No. 12CA3470, 2013-Ohio-5211 ¶ 63  ("as a general rule, trial courts may reconsider interlocutory orders prior to final judgment"); *Clymer v. Clymer*, 10th Dist. Franklin No. 95APF02-239, 1995 Ohio App. LEXIS 4303, *9 (Sept. 26, 1995) ("additional evidence, prior error or a change in circumstances might well argue against [a trial court's] blind adherence to a prior ruling").

{¶21}   Contrary to Rudolph's assertions, the trial court's June 30, 2009 entry on objections was not a final judgment that conclusively determined the parties' 2008 incomes.  Rather, it was an interlocutory order.  In its June 30, 2009 order, the trial court had remanded the matter to the magistrate for a recalculation of child support in light of its conclusion that the parties' incomes should be averaged over a three-year period.

{¶22}   Following objections by Murphy, the trial court concluded that it had erred by averaging Murphy's income for purposes of child support and eventually determined, as did the magistrate, that a de novo hearing was necessary. Because the trial court's June 30, 2009 entry was an interlocutory order, the trial court had the inherent authority to reconsider this order prior to final judgment. And because the trial court deemed a de novo hearing necessary for calculating the parties' incomes for child-support purposes for the magistrate to comply with its prior entries on the parties' objections, Rudolph's arguments are not well taken.  As a result, we overrule her first assignment of error.

### Calculation of Parties' Incomes for Child Support

{¶23} In her second assignment of error, Rudolph argues the trial court erred in setting the parties' incomes from 2008 to 2012 and ordering her to pay child support.

{¶24} A trial court's decision regarding child support will not be disturbed absent a showing of an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). A trial court abuses its discretion when it makes an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶25} Rudolph argues the trial court erred in calculating Murphy's income at $21,032 for 2008, $4,621 for 2009, $14,761 for 2010, and $25,810 for 2011 and 2012. The magistrate found, and the trial court agreed, that Murphy had shown his income had decreased due to circumstances beyond his control, namely the downtown of the real-estate market, which had caused the financial decline and eventual demise of his business, Ray Murphy Homes. The magistrate considered the evidence presented and found that Murphy's testimony was credible and was supported by his tax returns for 2008 to 2011. These findings were adopted by the trial court. In the absence of credible evidence presented by Rudolph to support her claims that Murphy had filed fraudulent tax returns, we cannot say the trial court erred in calculating his income based solely upon his testimony and his tax returns.

{¶26} Nor can we conclude that the trial court ignored evidence of additional income to Murphy for child-support purposes. Rudolph argues that the trial court ignored Murphy's paystubs for 2008, significant deposits in his personal bank account, and significant expenditures by Murphy for vacations, Bengals tickets,

and a boat, which demonstrated that he was living a lifestyle inconsistent with the income reported on his tax returns.

{¶27} Murphy testified that in 2008 his company, Ray Murphy Homes, had suffered significant financial losses and the bank had pulled its line of credit. As a result of the advice of a business turnaround expert, Murphy no longer collected paychecks, but began receiving repayment of the substantial loans he had made to the company. He also explained that the deposits in his bank account were proceeds from the sale of lots that had been distributed to him by Murphy Land Holdings, a company that had been created to hold the remaining real-estate lots that were left after Ray Murphy Homes came out of its assignment for the benefit of creditors. Given our review of the record, we cannot say the trial court erred in determining that those sums were a return of capital and should not be included in Murphy's gross income.

{¶28} Likewise, Rudolph's challenge to the trial court's factual finding that Murphy had been living frugally is not well taken. Rudolph's argument that the trial court had evidence before it that Murphy had expended large sums for vacations, Bengals tickets, and a boat is not supported by the record. Murphy testified that he sells his Bengals tickets and uses the money to buy groceries. As to vacations, Murphy testified that since the divorce and downturn of his business, he had vacationed in Montana only once, using frequent-flier miles and staying with friends. He had vacationed in Florida in 2007 prior to the downturn of his business. He had received the boat, which was worth $2,500, in the property division and he paid $60 per month in storage fees. Therefore, we cannot conclude the trial court erred in determining that Murphy had been living frugally since he had filed the motion to modify his child support.

{¶29} Thus, based upon the record before us, we cannot conclude the trial court abused its discretion in its determination of Murphy's gross income for child-support purposes for 2008, 2009, 2010, 2011, and 2012.

{¶30} Rudolph also argues that the trial court erred in calculating her income for 2008 and 2010. With respect to her 2008 income, the record reflects that Rudolph filed three tax returns. The magistrate determined Rudolph's income for 2008 to be $100,133, which included capital gains of $63,155 reflected on her tax return. The magistrate determined Rudolph's income for 2010 to be $77,964, which included $30,000 that was listed as an IRA distribution on her tax return. Rudolph testified that the capital gains and the IRA distribution were the result of the conversion of an IRA to a Roth IRA.

{¶31} In her objections to the magistrate's decision, Rudolph argued that the IRA was not taxable until it was withdrawn, while a Roth IRA is taxable upon deposit, allowing the earnings to accrue tax free. Therefore, Rudolph argued that these amounts should not be included in her gross income. She alternatively argued that even if the funds were distributed, they still should not be considered as income for child-support purposes because they are nonrecurring income, and thus excludable as gross income under R.C. 3119.01(C)(8). The trial court overruled Rudolph's objections.

{¶32} Although Rudolph maintains the trial court erred in including the sums as income, her second amended 2008 tax return and her 2010 tax return do not support her claim. Her second amended 2008 tax return showed that the capital gain was from the sale of some of the stocks and bonds in one of her investment accounts. Her 2010 tax return, likewise, listed the sum as an IRA distribution. Rudolph, moreover, presented no documentary evidence to corroborate her

testimony that she had rolled over the funds into a Roth IRA. As a result, we cannot say the trial court erred in determining that these monies were available to Rudolph and should be included in her income for 2008 and 2010. *See, e.g., Johns v. Johns*, 9th Dist. Summit No. 24704, 2009-Ohio-5798, ¶ 18-19 (holding that the trial court did not abuse its discretion in concluding that husband's IRA distributions constituted income for spousal-support purposes where husband presented no evidence that he had rolled the sums over into a Roth IRA).

{¶33} Nor can we conclude the trial court erred in determining that the sums were not nonrecurring income. R.C. 3119.01(C)(8) defines a nonrecurring or unsustainable income or cash flow item as

> an income or cash flow item the parent received in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. Nonrecurring or unsustainable income or cash flow item does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests and otherwise uses to produce income or cash flow for a period of more than three years.

{¶34} There is evidence that Rudolph had withdrawn a significant sum from her investment accounts, resulting in a capital gain of $63,155 in 2008, that she had taken a $30,000 distribution from an IRA in 2010, and that she just taken another such distribution in 2012. Rudolph testified that she takes these distributions "because [she] could sustain some of the tax liability because of the attorney fees." Her testimony, moreover, suggests that she will continue to do so in

the future. As a result, we cannot say the trial court abused its discretion in concluding that these amounts did not qualify as nonrecurring or unsustainable income under R.C. 3119.01(C)(7)(e). *See, e.g.*, *Tonti v. Tonti*, 10th Dist. Franklin Nos. 03AP-494 and 03AP-728, 2004-Ohio-2529, ¶ 59-64 (holding that payments from a cognovit note did not satisfy the definition of nonrecurring income where a significant portion of the note was still due and payable and it was reasonable to expect payments would continue to be made on a regular basis); *State ex rel. Athens Cty. Child Support Enforcement Agency v. Patel*, 4th Dist. 05CA20, 2006-Ohio-2951, ¶10-15 (holding that medicare payments to a father, who was a physician, could not be fairly characterized as nonrecurring income items where "one [could] assume that father w[ould] continue to render services during one calendar year but not be paid for those services until the following year"); *Foster v. Foster*, 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041, ¶ 22-23 (12th Dist.) (holding that trial court properly concluded a father's three-year receipt of property distributions were a source of recurring income where he could reasonably expect to receive such distributions in the future). We, therefore, overrule her second assignment of error.

### The Trial Court Had the Authority to Order Rudolph to Pay Child Support and did not Violate her Due-Process Rights

{¶35} In her third assignment of error, Rudolph argues the trial court erred when it ordered her to pay child support from 2008 to the present. She makes two separate, but interrelated arguments. First, she contends that because Murphy had only asked the trial court in his October 2008 motion to reduce the amount of his child-support obligation, and did not specifically ask the court to terminate his own support obligation or request that Rudolph pay child support, the trial court lacked the authority to order her to pay child support. Second, she argues that the

14

trial court's failure to provide her any notice that it was considering making her the child-support obligor for the years 2008 to 2012 violated her due-process rights.

{¶36} As support for her first argument, Rudolph relies upon *Citta-Pietrolungo v. Pietrolungo,* 8th Dist. Cuyahoga No. 80960, 2002-Ohio-4589. In that case, a mother, who had been designated the sole residential parent and legal custodian of the parties' three children, had filed a motion to relocate the children and to increase the father's child-support obligation. *Id.* at ¶ 5. The trial court had granted the mother's motion to relocate the children, but had denied her motion to increase child support. *Id.* at ¶ 12. The father appealed, arguing among other things, that the trial court had erred in its calculation and should have decreased the amount of his child-support obligation. *Id.* at ¶ 13 and 27. The Eighth District Court of Appeals disagreed. Citing its prior decision in *Slowbe v. Slowbe*, 8th Dist. Cuyahoga No. 75520, 2000 Ohio App. LEXIS 74 (Jan 13, 2000), the court concluded that because the father had "failed to file a motion to modify support requesting a decrease: the trial court lacked jurisdiction to consider whether the support was appropriate." *Citta-Pietrolungo* at ¶ 29.

{¶37} In *Slowbe v. Slowbe*, a father, following a remand from the appellate court, had attempted to relitigate the issue of child support, but had not filed a motion to modify the child support. As a result, the magistrate refused to permit the father to introduce evidence on the issue. *Slowbe* at *2. On appeal, the father argued that the trial court had erred in overruling his objections to the magistrate's decision which had refused him the right to present this evidence. The Eighth District Court of Appeals disagreed. *Id.* at *3. It held that the trial court had properly determined it lacked jurisdiction to modify child support, given father's concession that he had failed to file a motion to modify support, which was the

15

proper procedure for him to invoke the trial court's continuing jurisdiction under R.C. 3113.215(B)(4). *Id.* at *4-5.

{¶38} We find both these cases to be distinguishable. Here, Rudolph and Murphy had entered into a shared-parenting plan. Under the terms of their plan, both Rudolph and Murphy had been designated as the residential parent and legal custodian for the children and had agreed to share all aspects of the physical and legal care of their children, including their obligation to provide the necessary ongoing financial support for their children. *See* R.C. 3109.04(A)(2). The Ohio Supreme Court has held that child support is among the many terms of a shared-parenting plan, and may be modified by the court sua sponte under R.C. 3109.04(E)(2)(b) upon a finding that the modifications are in the best interest of the children. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 27-31.

{¶39} When Murphy filed his motion to modify child support on October 22, 2008, he brought the matter of child support squarely before the trial court. The filing of his motion, which was properly served on Rudolph, provided her with notice that Murphy had experienced a change in circumstances and that he was seeking to decrease his child-support obligation. Given the terms of the parties' shared-parenting plan and the language in R.C. 3109.04(E)(4)(b), Rudolph had notice that, depending upon the child-support worksheet calculations, she could be designated the child-support obligor and thus required to pay child support to Murphy.

{¶40} Rudolph, moreover, engaged in discovery with Murphy for the years 2008 to 2012, and Rudolph's attorney agreed that because Murphy's motion had lingered in the trial court for more than four years, the trial court could calculate the amount of child support from 2008 to 2012. Rudolph, thus, not only had notice

16

that the issue of child support was before the court, but she had ample opportunity to present her arguments to the court. She does not argue that she would have presented any other evidence or that she would have employed another trial tactic had she been given any additional notice by the trial court or Murphy. Because we have concluded that the trial court had the authority to make the orders requiring Rudolph to pay child support and did not violate Rudolph's due-process rights, we overrule her third assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J,** and **CUNNINGHAM, J.,** concur.

Please note:

The court has recorded its own entry this date.