[Cite as *Reddy v. Reddy*, 2015-Ohio-3368.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MATTHEW J. REDDY, | : | APPEAL NOS. C-140609 |
| | | C-140678 |
| Plaintiff-Appellant, | : | TRIAL NO. DR0601018 |
| vs. | : | *O P I N I O N.* |
| SHELLEY E. REDDY, | : | |
| Defendant-Appellee. | : | |

Appeals From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 21, 2015

*Sebaly Shillito + Dyer* and *Alex S. Rodger*, for Plaintiff-Appellant,

*Beth I. Silverman & Associates, LLC,* and *Beth I. Silverman,* and *Ginger S. Bock Law Office, Inc.,* and *Ginger S. Bock*, for Defendant-Appellee.

Please note: this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}    Plaintiff-appellant Matthew J. Reddy appeals the trial court's decision granting defendant-appellee Shelley E. Reddy's motion for spousal support.  We find no merit in his four assignments of error, and we affirm the trial court's judgment.

### I.    Factual Background

{¶2}    The record shows that the parties were divorced on April 19, 2007.  They had four children.  The oldest child, Rachel, had numerous medical issues.  She functioned at a five-month level and required constant care.  At the time of the divorce, neither party received any government assistance for Rachel's support.

{¶3}    Under the terms of the decree of shared parenting, Matthew was to pay child support of $500 per month per child.  Because of his unpredictable bonuses, he agreed to pay directly to Shelley child support equaling 20 percent of his income that exceeded $200,000.  The decree specifically stated that "[t]he parties have deviated from the child support guidelines because Father's income exceeds $150,000, and because of the needs of the children and their lifestyle."

{¶4}    Under the terms of a separation agreement incorporated into the divorce decree, Matthew was to pay Class I spousal support of $4,000 per month.  Class I support was to terminate after 72 months.  When that support order terminated, Shelley could then seek Class II spousal support.

{¶5}    The divorce decree stated that "if the court is asked to exercise its jurisdiction to order Class II support, the following circumstances shall be considered" in determining the amount:  (1) Rachel's condition and needs, including any improvement or deterioration in her condition, changes in her required level of care, and increases or decreases in expenses for her care, (2) Matthew's income and ability to pay,

(3) Shelley's circumstances, including her health, employment opportunities, and the impact of Rachel's care requirements, (4) any government assistance available for Rachel, including but not limited to, Social Security, and (5) any other relevant factors.

{¶6} The decree further provided that the parties had agreed that Matthew would "pay no less than 20% of his gross income between child support and spousal support." The trial court was to retain jurisdiction to modify the amount and duration of Class II support, but "in any event, the mandatory minimum level of support * * * shall be binding."

{¶7} Subsequently, Shelley filed a motion asking that Matthew be found in contempt for failing to pay child support and spousal support. The court journalized an entry on August 15, 2014, stating that the parties had agreed that the child-support arrearage was $28,609 and the spousal-support arrearage was $4105.91. The entry also stated that "[t]he child support arrearage is established pursuant to the obligation set forth in the parties [sic] Decree of Shared Parenting, wherein Father is to pay Mother 20% of his income which exceeds $200,000 per year, as additional child support." The entry indicated that "the parties reached an agreement * * * that Father owed Mother $28,609 pursuant to that formula."

{¶8} Shortly before the Class I spousal support was to terminate, Shelley filed a motion asking the trial court to "establish Class II spousal support." The parties presented evidence at a hearing before a magistrate.

{¶9} The evidence showed that Shelley was Rachel's primary caregiver. Because of the intensive amount of care that Rachel needed, Shelley was able to work only part-time for a flexible employer and, as a result, she made about $15,840 per year. After the divorce, Rachel and the parties started receiving some government assistance. At the time of the hearing, Rachel was receiving $8350 annually in SSI benefits.

{¶10} Additionally, Hamilton County Developmental Disabilities Services started providing the parties with services equivalent to $34,700 annually under an Independent Options ("IO") wavier. Those services included in-home aides, summer camp, medical equipment, home-accessibility modifications and respite care. Though both parties have access to the IO resources, Shelley used the vast majority of them. The parties did not receive any money directly under the IO waiver.

{¶11} Shelley presented evidence that the aides were generally uneducated and unreliable. When an aide quit, Shelley was required to train a new aide for a few days to ensure proper care for Rachel. Further, aides could not care for some of Rachel's specialized needs, and they did not do laundry, go to the pharmacy, or take Rachel to medical appointments. While aides could administer medication, Shelley had to obtain and organize the medicines.

{¶12} The evidence also showed that Rachel's condition was deteriorating. She had been hospitalized on several occasions, and she will need surgery in the future. When Rachel was hospitalized, Shelley monitored her medication at the hospital to make sure that it was "accurate." An expert stated that "[i]t is medically necessary that Rachel have close ongoing supervision by caregivers familiar with her condition, administration of her multiple medications, and understand how to intervene in the event of acute problems which occur frequently and without warning." The magistrate found that Shelley "continues to be the primary point person between Rachel and her doctors, teachers, and home health aide workers."

{¶13} The evidence also showed that Matthew makes at least $195,000 a year, plus bonuses. In the three years preceding the hearing, he earned more than $1,000,000. At the time of the divorce decree, he had no outstanding debt. Afterward, he accumulated a substantial amount of debt, which he acknowledged was his personal

responsibility. He testified that between paying the debt, the spousal support and child support, he had difficulty making ends meet.

{¶14} After hearing the evidence, the magistrate issued a decision with findings of fact and conclusions of law. The magistrate discussed the provision in the divorce decree stating that Matthew would pay no less than 20 percent of his income between child support and spousal support. She then stated that "[i]n order for the court to determine the percentage and amount of spousal support that is appropriate in this case, if the Court orders Class II spousal support, the Court must know the amount of support that will be ordered[.]" The magistrate reduced the amount of child support to $481.05 per month per child, struck the provisions in the decree requiring Matthew to pay additional support on income exceeding $200,000, and reduced the amount of spousal support to $1,333.33.

{¶15} The magistrate's decision was journalized on May 8, 2014, and an entry adopting the magistrate's decision was journalized the same day. Shelley filed objections on May 23, 2014, one day out of time. Matthew did not raise the issue of the timeliness of the objections, and the trial court never specifically addressed it.

{¶16} The trial court sustained Shelley's objections. It stated:

> At issue is spousal support, particularly the spousal support identified as "Class II" spousal support. Father, in the Separation Agreement, agreed to pay in total, no less than $20% of his gross income in payments to Mother divided between spousal support and child support. When making a determination of adjustment for *spousal* support, the magistrate should have kept the *child* support amount static because it was not necessary, nor was it anticipated by the parties that

future modifications would be calculated in such a way to ensure all future payment obligations must be **<u>exactly</u>** 20% of gross.

It is not proper for this Court to *sua sponte* strike the prior approved Entry/Agreement of these parties. (There has been no credible evidence that it is in the best interests of the children to do so.)

Shared Parenting Plan paragraph 14.2 provides ". . . the Husband will pay no less than 20% of his gross income between child support and spousal support...". It is inaccurate to interpret this as Father shall pay exactly 20%; just simply "no less than" 20%. The Court does not need to strive to balance the child support and support amounts to exactly "20%" of Father's income.

(Emphasis sic.)

{¶17} Consequently, the court ordered spousal support to remain at $4000 per month and child support to remain at $500 per month per child. The court also ordered that the "April 15, 2014 Agreed Entry still stands as valid and enforceable." Finally, it stated that "[t]he language of the parties' agreement and the Court's statutory obligation to decide the best interest of the children requires that the parties [sic] agreement be upheld." This appeal followed.

## II. *Timeliness of Objections*

{¶18} In his first assignment of error, Matthew contends that the trial court erred by ruling on Shelley's objections because they were not timely filed. He argues that because the trial court had already entered judgment on the magistrate's decision and no timely objections were filed, the court did not have jurisdiction to consider the objections. This assignment of error is not well taken.

6

{¶19}    Before we reach the merits of this assignment of error, we must address a procedural issue.   After the appeal was filed, Shelley filed a motion to correct the record under App.R. 9(E).  The trial court improperly granted that motion.  *See Brown v. Pollack*, 8th Dist. Cuyahoga No. 85865, 2005-Ohio-6231, ¶ 24; *Woodman v. Jones*, 103 Ohio App.3d 577, 580, 660 N.E.2d 520 (8th Dist.1995); *State v. Bullock*, 5th Dist. Perry No. CA-468, 1995 Ohio App. LEXIS 3727, *2-3 (May 11, 1995).  Consequently, we cannot consider any of the issues raised in that motion as they are not a part of the record on appeal.  *See State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus; *State v. Fields*, 1st Dist. Hamilton No. C-090648, 2010-Ohio-4114, ¶ 15.

{¶20}    We turn now to the merits of the assignment of error.  Under Civ.R. 53(D)(3)(b)(i), a party may file written objections to a magistrate's decision within 14 days of the filing of the decision.  But Civ.R. 53(D)(5) allows the court to extend the time to file objections "for good cause shown."

{¶21}    In this case, Matthew did not bring the timeliness issue to the trial court's attention and waived the right to raise the issue on appeal.  *See Stores Realty Co. v. Cleveland*, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975); *Werden v. Children's Hosp. Med. Ctr.*, 1st Dist. Hamilton No. C-040889, 2006-Ohio-4600, ¶ 15.  Absent an indication to the contrary in the record, we presume that the trial court found good cause to entertain the untimely objections.  *See Cwik v. Cwik*, 1st Dist. Hamilton No. C-090843, 2011-Ohio-463, ¶ 84-85.  Therefore, we overrule Matthew's first assignment of error.

### III.   Spousal Support

{¶22}    In his second assignment of error, Matthew contends that the trial court erred in awarding spousal support that was neither appropriate nor

7

reasonable. He argues that the trial court failed to consider the factors in R.C. 3015.18. This assignment of error is not well taken.

{¶23} R.C. 3105.18 provides that the trial court may award spousal support as is "appropriate and reasonable." *Coors v. Maceachen*, 1st Dist. Hamilton No. C-100013, 2010-Ohio-4470, ¶ 12. In making its determination, the court must consider the factors set forth in R.C. 3105.18(C)(1), but it should not base its determination on any one of those factors taken in isolation. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 96, 518 N.E.2d 1197 (1988); *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22. The trial court is not required to enumerate each statutory factor as long as it considered the relevant factors. *Kaletta* at ¶ 22.

{¶24} The trial court has broad discretion in determining the amount and duration of spousal support. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990); *Coors* at ¶ 13. If some competent, credible evidence supports the court's decision, it is not an abuse of discretion. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575 (1998); *Coors* at ¶ 13.

{¶25} The record shows that the trial court considered the statutory factors, as well as the factors enumerated by the parties in the separation agreement incorporated into the divorce decree. The trial court's decision was supported by competent, credible evidence, including evidence showing Rachel's need for full-time care, the responsibility borne by Shelley for caring for Rachel, and the disparity in the parties' incomes. Under the circumstances, we cannot hold that the trial court abused its discretion in awarding spousal support.

{¶26} Matthew also argues that the trial court abused its discretion in failing to consider the changes in circumstances of the parties in relation to the mandatory

8

factors in R.C. 3105.18 and the agreed-upon factors in the parties' separation agreement. We find no merit in this argument.

{¶27} First, the record shows that the trial court did consider the changes in circumstances. The trial court simply didn't agree with the magistrate's assessment of those circumstances. A magistrate's oversight of a case is an aid to the trial court's judicial functions, not a substitute for them. The trial court remains the "ultimate determiner" of the case. *Yantek v. Coach Builders, Ltd.*, 1st Dist. Hamilton No. C-060601, 2007-Ohio-5126, ¶ 10.

{¶28} Further, the trial court did not modify spousal support. It made a new award of Class II spousal support because Class I support had terminated per the parties' agreement. In the agreement, the parties did not determine the initial amount of Class II support. Under the circumstances, we cannot say that the trial court erred in awarding Class II spousal support, and we overrule Matthew's second assignment of error.

### IV. Direct Payments

{¶29} In his third assignment of error, Mathew contends that the trial court erred in enforcing an order that was contrary to R.C. 3121.44. He argues that the trial court abused its discretion by authorizing child-support payments directly to Shelley and not through the Child Support Enforcement Agency ("CSEA"). This assignment of error is not well taken.

{¶30} The record shows that the decree of shared parenting required Matthew to make payments directly to Shelley if his annual income exceeded $200,000. The arrearage calculated in the April 15, 2014 agreed entry was based on that provision. He argues that that provision of the shared-parenting plan was void and the trial court erred by enforcing the April 15, 2014 agreed entry. We disagree.

9

{¶31}    R.C. 3121.44 and 3121.45 set forth mandatory language requiring the payment of child support to "the office of support in the department of job and family services" and obligating the court to consider any direct payment as a gift.  *Lepore v. Breidenbach*, 1st Dist. Hamilton No. C-140310, 2015-Ohio-2929, ¶ 14.  Some courts have stated that the trial court has no authority to approve payments that are not paid to CSEA.  *See Bowley v. Bowley*, 12th Dist. Warren No. CA97-12-126, 1998 Ohio App. LEXIS 2280, *3-4 (May 26, 1998); *Starr v. Starr*, 109 Ohio App.3d 116, 121, 671 N.E.2d 1097 (8th Dist.1996).

{¶32}    This court has recently held that a trial court's failure to order child support to be paid to CSEA does not render the judgment void, but merely voidable.  Therefore, that judgment can only be attacked on direct appeal and cannot be collaterally attacked in a separate proceeding.  *Lepore* at ¶ 18-19.  We further held that a voidable order that has not been reversed, vacated, or set aside can be enforced in contempt.  *Id.* at ¶ 22-24.

{¶33}    The 2007 decree of shared parenting was a final, appealable order, as was the April 15, 2014 agreed entry.  Any alleged errors contained in them should have been raised in a direct appeal from those judgments.  *See Lepore* at ¶ 29.  Further, to the extent that a party seeks to revisit an issue regarding a support arrearage that was previously considered and decided by a court, the doctrine of res judicata applies.  *Id.* at ¶ 27.  Consequently, Matthew cannot now raise the issue that the past child-support orders did not comply with the mandate of R.C. 3121.44.  We overrule his third assignment of error.

### V.   Modification of Child Support

{¶34}    Finally, in his fourth assignment of error, Matthew contends that the trial court erred when it found that a court may not, upon its own motion, modify child

support. He argues that the trial court abused its discretion in vacating the magistrate's decision modifying child support on that basis. This assignment of error is not well taken.

{¶35}   We agree that the trial court was incorrect in stating that a court may not modify child support on its own motion, because R.C. 3109.04(E)(2)(b) allows a court to do so as long as the modification is in the best interest of the children. *Murphy v. Murphy*, 1st Dist. Hamilton No. C-130229, 2014-Ohio-656, ¶ 38, citing *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 27-31.

{¶36}   Nevertheless, the trial court went on to state that "[t]here has been no credible evidence that it is in the best interest of the children to do so." Competent, credible evidence supported that finding. Under the circumstances, we cannot hold that the trial court's decision denying a modification of child support was an abuse of discretion. Therefore, we overrule Matthew's fourth assignment of error.

### VI.  Summary

{¶37}   In sum, we find no reversible error in the trial court's decision. Consequently, we overrule Matthew's four assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**HENDON, P.J.,** concurs.
**DEWINE, J.**, concurs in judgment only.

Please note:
    The court has recorded its own entry this date.

11