[Cite as *Kranbuhl-Mckee v. Durrani*, 2016-Ohio-5286.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

LAURA KRANBUHL-MCKEE, :

    Plaintiff-Appellant, :

    - vs -

ABUBAKAR ATIQ DURRANI, M.D., et al., :

    Defendants-Appellees. :

CASE NO. CA2015-11-191

O P I N I O N
8/8/2016

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-02-0667

Matthew J. Hammer, 5247 Madison Pike, Independence, Kentucky 41051, for plaintiff-appellant

Lindhorst & Dreidame Co., L.P.A., James F. Brockman and Michael F. Lyon, 312 Walnut Street, Suite 3100, Cincinnati, Ohio 45202, for defendants-appellees, Abubakar Atiq Durrani, M.D. and Center for Advanced Spine Technologies, Inc.

Frost Brown Todd, LLC, Douglas R. Dennis, Walter E. Haggerty, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202, for defendants-appellees, West Chester Hospital LLC & UC Health, Inc.

**S. POWELL, J.**

{¶1} Plaintiff-appellant, Laura Kranbuhl-McKee, appeals from the decision of the Butler County Court of Common Pleas denying her motion for a new trial in a medical malpractice action against defendants-appellees, Abubakar Atiq Durrani, M.D., his private

practice, the Center for Advanced Spine Technologies, Inc. ("CAST"), as well as West Chester Hospital, LLC ("WCH") and UC Health, Inc. For the reasons outlined below, we affirm.

{¶2} On February 28, 2013, Kranbuhl-McKee filed a medical malpractice action against Dr. Durrani, CAST, WCH, and UC Health resulting from the medical treatment she received between October 2010 and March 2012. The complaint set forth several causes of action including claims of negligence, battery, fraud, and intentional infliction of emotional distress. The matter ultimately proceeded to a jury trial in July 2015. It is undisputed that Dr. Durrani was not present at trial having previously left the country.

{¶3} Prior to trial, the trial court issued an order on one of Kranbuhl-McKee's various motions in limine, wherein it determined that her trial counsel could argue during closing argument that Dr. Durrani's leaving the country was evidence of his "consciousness of professional negligence." The trial court then stated that its decision on this issue, as well as a variety of other pre-trial issues, was "final and not the starting point for further argument." The trial court also determined that it would give the following introductory statement as it concerns Dr. Durrani's absence from the trial:

> Dr. Durrani is not required to attend this trial and he has chosen not to attend and has left the country. His failure to attend is not because of a professional conflict. The fact that Dr. Durrani will not participate does not mean that he committed malpractice in his treatment of [Kranbuhl-McKee]. The burden of proof is upon [Kranbuhl-McKee] to prove malpractice, not upon Dr. Durrani to prove he didn't commit malpractice.

{¶4} Although the trial court had previously indicated its decision on the matter was final, WCH and UC Health filed a motion asking the trial court to reconsider its decision as to whether Kranbuhl-McKee's trial counsel would be allowed to present an argument regarding Dr. Durrani's purported "consciousness of professional negligence" during closing argument. After hearing arguments from all parties, the trial court agreed to reconsider its prior decision

and determined that allowing Kranbuhl-McKee's trial counsel to present such an argument during closing argument would be improper for it would be encouraging the jury to engage in speculation. Specifically, the trial court stated, in pertinent part:

> You're asking [the jury] to speculate and isolate the fact that [Dr. Durrani] left the country as it relates to this – his behavior in this case. And that's asking the jury to speculate.
>
> And that's exactly what * * * courts are trying to avoid. * * * But the way I see it, it's a question of motivation.
>
> And to get at the motivation, allow it to be argued, is allowing the * * * jury to guess as to why [Dr. Durrani] left the country; and then what's worse, to hold it against him, rather than concentrate on the facts of this case.
>
> Did [Dr. Durrani], in the course of his treatment of [Kranbuhl-McKee], commit malpractice?
>
> Did he, in the course of his conversations with her * * * and the documents he had her sign, did he commit fraud?
>
> In the course of his * * * surgical presentation, did he * * * lure her into * * * having surgery when the rationale for it and the reasons for it were made up?
>
> That's where the rubber meets the road in this case. And * * * as a trial judge who has a degree of discretion, I'm going to keep this trial * * * in focus.
>
> * * *
>
> I'm trying to keep this trial focused. That's my job. That's what I'm going to do. Okay?
>
> So this decision, I regret, I have to tell you. I made this pretrial order because I fully intended to be governed by it, but things change as evidence develops.
>
> * * *
>
> So you can tell the jury exactly what I said in the pretrial order, and nothing more.

Following deliberations, the jury returned a verdict in favor of Dr. Durrani and CAST, with the trial court awarding a directed verdict to WCH and UC Health.

{¶5} After the jury reached its verdict, Kranbuhl-McKee filed a motion for a new trial. As part of that motion, Kranbuhl-McKee argued that she was entitled to a new trial since the trial court improperly "changed a material ruling" by prohibiting her trial counsel from arguing in closing that Dr. Durrani's leaving the country was evidence of his "consciousness of professional liability." The trial court subsequently denied the motion finding it had "simply changed its mind" in order to avoid having the jury speculate as to the reason why Dr. Durrani may have left the country. Kranbuhl-McKee now appeals from the trial court's decision, raising two assignments of error for review.

{¶6} Assignment of Error No. 1:

{¶7} THE TRIAL COURT ERRED BY ARBITRARILY, UNREASONABLY, AND UNCONSCIONABLY CHANGING ITS MIND RESULTING IN AN INJUSTICE TO APPELLANT.

{¶8} Assignment of Error No. 2:

{¶9} APPELLANT WAS PREJUDICED AND THE TRIAL COURT'S ABUSE OF DISCRETION EFFECTED AN INJUSTICE TO HER.

{¶10} In her two assignments of error, Kranbuhl-McKee argues the trial court erred and abused its discretion by denying her motion for a new trial. We disagree.

{¶11} Civ.R. 59(A) sets forth nine separate grounds under which a party may seek a new trial. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 12th Dist. Clermont No. CA2015-02-021, 2016-Ohio-549, ¶ 57. Pursuant to Civ.R. 59(A)(1), this includes an "[i]rregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial[.]" The rule also permits a trial court to grant a new trial for "good cause shown." *Rathert v. Kempker*, 12th Dist. Clermont No. CA2010-06-043, 2011-Ohio-1873, ¶ 67. "The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59 is reviewed for an

abuse of discretion." *Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 10, citing *Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312 (1995). An abuse of discretion in ruling on a motion for a new trial connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.*, 109 Ohio App.3d 312, 325 (12th Dist.1996).

{¶12} Kranbuhl-McKee argues the trial court erred and abused its discretion by denying her motion for a new trial since the trial court improperly "changed its mind" and prohibited her trial counsel from arguing during closing that Dr. Durrani's leaving the country was evidence of his "consciousness of professional liability" when the court previously determined that counsel could make the argument. However, although originally stating that its decision on that issue was "final," such a decision was clearly an interlocutory order on a motion in limine.

{¶13} "Requests for reconsideration of interlocutory orders in the trial court 'may be entertained at the discretion of the court.'" *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 241 (7th Dist.2000), quoting *LaBarbera v. Batsch*, 117 Ohio App. 273, 276 (8th Dist.1962). That is because "[a] trial court always has the inherent power to correct prior errors or reconsider an interlocutory order entered in the same case." *Murphy v. Murphy*, 1st Dist. Hamilton No. C-130229, 2014-Ohio-656, ¶ 20. We find no abuse of discretion in the trial court's decision to reconsider its original ruling in this matter for "it has long been established that a trial court has wide discretion in control of its own docket and regulating the proceedings before it." *Fifth Third Bank v. Meadowpark Plaza, L.L.C.*, 12th Dist. Clinton No. CA2015-07-012, 2016-Ohio-753, ¶ 34.

{¶14} The question then becomes whether the trial court erred and abused its discretion by prohibiting Kranbuhl-McKee's trial counsel from presenting this argument to the jury during closing argument, something which she claims unfairly prejudiced her case.

{¶15} Due to the trial court's earlier decision in regards to one of Kranbuhl-McKee's various motions in limine, no evidence was ever presented as to why Dr. Durrani left the country, nor can we find any evidence in the record that would indicate Dr. Durrani left the country because Kranbuhl-McKee filed a lawsuit against him. Kranbuhl-McKee admitted as much to the trial court when her trial counsel specifically acknowledged that it was pure speculation as to why Dr. Durrani may have left the country. Although it should generally go without saying, the purpose of closing argument is not to encourage the jury to engage in unnecessary speculation as to some tertiary issue, but rather "to summarize the evidence at trial." *John F. Bushelman Const. v. Glacid Group, Inc.*, 1st Dist. Hamilton Nos. C-950412 and C-950438, 1996 WL 348002, *3 (June 26, 1996). The evidence presented at trial dealt with the issue of whether Dr. Durrani had committed medical malpractice, a question which the jury clearly determined in the negative.

{¶16} We are also unpersuaded by Kranbuhl-McKee's assertion that the trial court's decision unfairly prejudiced her case. Contrary to Kranbuhl-McKee's claim, because the trial court's decision dealt exclusively with what arguments her trial counsel could present during closing argument, nothing about the trial court's decision impacted what evidence she could present to the jury during her case-in-chief. Moreover, just as the trial court found, "[n]ot permitting what counsel had planned is far different from allowing [the defendants] to produce evidence that [she] had no chance to confront." The fact that her trial counsel had to re-write his closing argument to remove certain portions of his prepared statements also falls well-short of what could be considered unfairly prejudicial. Therefore, because we find no error or abuse of discretion in the trial court's decision, Kranbuhl-McKee's two assignments of error are without merit and overruled.

{¶17} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.