[Cite as *Sutton v. Sutton*, 2011-Ohio-1439.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| LAWRENCE SUTTON | : | |
| | : | Appellate Case No. 24108 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2003-DR-1453 |
| v. | : | |
| | : | |
| CHRISTY L. SUTTON | : | (Civil Appeal from Common Pleas |
| | : | Court, Domestic Relations) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of March, 2011.

. . . . . . . . . . .

ANNE C. HARVEY, Atty. Reg. #0054585, 2310 Far Hills Avenue, Suite 3, Dayton, Ohio 45419
     Attorney for Plaintiff-Appellant

TRISHA M. DUFF, Atty. Reg. #0052147, 7501 Paragon Road, Lower Level, Dayton, Ohio 45459
     Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiff-appellant Lawrence H. Sutton appeals from an order modifying a shared parenting agreement by designating his ex-wife, defendant-appellee Christy L. Sutton, as the residential parent of the parties' minor child. Sutton contends that the trial court erred

in finding that there was a change of circumstances supporting a modification of custody. He further contends that the trial court erred with regard to its finding that the modification was in the best interest of the child.

{¶ 2} We conclude that the trial court did not abuse its discretion in modifying the shared parenting agreement. There is evidence to support a finding that Mr. Sutton had essentially ceded primary care of the child to his parents and that he had purposefully interfered with Ms. Sutton's communication with the child. Furthermore, the evidence supports a finding that the modification is in the best interest of the child. Accordingly, the order from which this appeal is taken is Affirmed.

I

{¶ 3} The parties were married in South Carolina in July 2000. The parties had one child who was born in January 2001. The child was born with severe congenital heart disease, which has required several surgeries and procedures during the course of her life.

{¶ 4} In April 2001, the parties moved to Ohio in order to be closer to Ms. Sutton's family. In October 2003, Mr. Sutton filed a complaint for divorce in the Montgomery County Common Pleas Court, and then he and the child moved to South Carolina. The parties were granted a divorce in November 2005. Of relevance to this appeal, the trial court awarded custody of the child to Mr. Sutton.

{¶ 5} Since her birth, the majority of the child's surgeries and procedures have been performed at Cincinnati Children's Medical Center. However, while living in South Carolina, the child was followed by doctors at the Medical College of Georgia located in Augusta, Georgia. On July 5, 2007, the child had a heart catheterization performed at

Cincinnati Children's. On July 25, Ms. Sutton filed a "Motion for Reallocation of Parental Rights and Responsibilities," in which she sought custody of the child based upon the claim that the Georgia doctor treating the child had deferred to the physicians located in Cincinnati with regard to the performance of the procedure. Thus, Ms. Sutton claimed that the child should continue to live with her in order to remain close to the Cincinnati doctors.

{¶ 6} Eventually, in 2008 the parties filed a Joint Petition for Shared Parenting in which they agreed that they would share custody of the child with Mr. Sutton being designated as "the residential parent for school purposes."

{¶ 7} On January 21, 2009, Mr. Sutton filed a motion to suspend Ms. Sutton's parenting time based upon the allegation that the child had been sexually molested by her step-brother, Ms. Sutton's son, during Ms. Sutton's period for parenting time/visitation. Two days later Ms. Sutton filed a motion seeking to terminate the shared parenting agreement and for the trial court to award custody of the child to her. The motion alleged that Mr. Sutton had prevented communication between her and the child; that Mr. Sutton had "been arrested for domestic violence" with regard to his current wife; and that the child had been "inappropriately touched" by a thirteen-year-old boy while in the care of Mr. Sutton. It appears from the record that Ms. Sutton's allegations were made, and reported to authorities, prior to the allegations raised by Mr. Sutton.

{¶ 8} The child spent most of the summer of 2009 with the mother in order to make up for parenting time that she had not been provided. In August, Mr. Sutton filed a motion for contempt alleging that Ms. Sutton had failed to return the child at the end of the summer.

{¶ 9} The motions were heard by a magistrate on August 28, 2009. At the hearing,

Mr. Sutton withdrew his motion to suspend Ms. Sutton's parenting time, and Ms. Sutton modified her motion to request that the shared parenting plan be modified, rather than terminated, with her being designated as residential parent. Following the hearing, the magistrate entered a decision recommending that "the shared Parenting Plan remain in effect with [Ms. Sutton] being designated as the residential parent for school purposes."

{¶ 10} Mr. Sutton filed objections to the magistrate's decision, which were overruled. The trial court adopted the decision of the magistrate. Mr. Sutton appeals.

II

{¶ 11} Sutton's sole assignment of error states as follows:

{¶ 12} "THE TRIAL COURT ERRED WHEN IT ADOPTED THE MAGISTRATE'S DECISION AS A PERMANENT ORDER."

{¶ 13} Mr. Sutton contends that the decision to modify the designation of residential parent constitutes an abuse of discretion. In support, he argues that the trial court erred in determining that there was evidence of a change in circumstances sufficient to support a modification. He further argues that the trial court's determination regarding the best interest of the child is erroneous.

{¶ 14} In *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, the Supreme Court of Ohio held that a court may not modify the designation of a residential parent and legal custodian of a child in a shared-parenting decree without first determining that a "change in circumstances" has occurred and that the modification is in the best interest of the child. Id. Syllabus. This is so because R.C. 3109.04(E)(1)(a) provides, "the court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it

finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following [in relevant part] applies:

{¶ 15} " * * * *

{¶ 16} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 17} Pursuant to R.C. 3109.04(F)(1), in determining the best interest of the child, the "court shall consider all relevant factors, including, but not limited to: (a) The wishes of the child's parents regarding the child's care; (b) If the court has interviewed the child in chambers * * * the wishes and concerns of the child as expressed to the court; (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; (h) Whether either parent * * * previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted

in a child being an abused child or a neglected child; * * *; (I) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶ 18} Although a trial court must follow the dictates of R .C. 3109.04 in deciding child-custody matters, it enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. Absent an abuse of that discretion, a reviewing court will affirm the custody determination of the trial court. "Abuse of discretion" is a term used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 219.

{¶ 19} In this case, the trial court determined that there had been a change in circumstances because Mr. Sutton "had interfered with [Ms. Sutton's] parenting time through phone communications and other means," and because Mr. Sutton's parents had begun to act as the "primary caregiver of the minor child when [the child] was living in South Carolina." We find that the record supports these findings. Mr. Sutton deliberately prevented contact or communication between Ms. Sutton and the child – a fact that he candidly acknowledged. Furthermore, the record supports a finding that Mr. Sutton's mother, rather than Mr. Sutton, acted as the primary caregiver for the child while the child resided with him. Indeed, the child lived with Mr. Sutton's parents from October 17, 2008 until November 25, 2008.

{¶ 20} Additionally, it is clear that the majority, if not all, of the child's major

procedures and surgeries have been performed by doctors in Cincinnati. It also appears that the facility in South Carolina lacked a pediatric surgeon capable of performing the heart catheterization needed by the child in 2007 and that she was therefore required to return to Cincinnati for treatment. The record supports a finding that the child's medical issues are being met in Cincinnati, and cannot be properly met while residing with her father. Thus, the trial court could properly find that residing in Ohio, closer to the doctors in Cincinnati, is an advantage that outweighs any harm that might be caused by a change of residency.

{¶ 21} We next turn to the issue of the best interest of the child. When the child was interviewed by the trial court in chambers, she "expressed a desire to remain primarily in defendant's custody. She stated that she would feel bad if she had to go back to South Carolina and leave [Ms. Sutton]." R.C. 3109.04(F)(1)(b).

{¶ 22} The trial court further had the benefit of a report from the child's Guardian Ad Litem (GAL). The GAL stated that he "did not believe that [Mr. Sutton] was primarily responsible for [the child] when she was to be in his care. He believed that the paternal grandmother was the primary caretaker. He further believed that [Mr. Sutton] and the paternal grandmother had attempted to influence [the child's] statements to him." The GAL stated that the child voluntarily told him that her father made her tell the GAL that Ms. Sutton "spanks her for no reason and that [she] leaves marks on her." The GAL stated that Mr. Sutton allowed the child to be in contact with the person accused of molesting her in violation of court orders. According to the GAL, Ms. Sutton had a viable health care plan for the child as well as a plan for school. Finally, the GAL stated that the child expressed a wish to remain with the mother. Based upon his interviews and investigations, the GAL recommended that

the child live with Ms. Sutton.

{¶ 23} The record supports a finding that the child has good interaction with both her parents, but that she is more bonded to her mother. R.C. 3109.04(F)(1)(c). The record further shows that she had lived with her mother for an entire summer and that she was well-adjusted to the arrangement. R.C. 3109.04(F)(1)(d).

{¶ 24} The evidence supports a finding that Mr. Sutton purposefully denied Ms. Sutton's right to have contact with the child, and that Ms. Sutton is more likely to facilitate Mr. Sutton's parenting time. R.C. 3109.04(F)(1)(f) and (I). Mr. Sutton admitted that he cut off contact between the child and Ms. Sutton for a period of time. Conversely, while the child was with Ms. Sutton over the summer of 2009, Ms. Sutton encouraged the child in regular and frequent contact with Mr. Sutton. Furthermore, during that same summer, Mr. Sutton "rarely telephoned [the child], and when the child called Mr. Sutton, the conversations were very brief because Mr. Sutton ended them quickly." Contrary to Mr. Sutton's claim that Ms. Sutton deliberately and improperly kept the child when her parenting time ended in August 2009, the trial court found that "[Ms. Sutton] mistakenly believed that she was to enroll [the child] in the Huber Heights school and did so. This matter was clarified at the hearing and [the child] returned home with [Mr. Sutton] to South Carolina until further order of this court."

{¶ 25} We conclude that, while this case is close, there is evidence to support the findings of the trial court. We cannot say that the trial court abused its discretion. Therefore, Mr. Sutton's sole assignment of error is overruled.

III

{¶ 26} Mr. Sutton's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and HALL, J., concur.


Copies mailed to:


Anne C. Harvey
Trisha M. Duff
Hon. Timothy D. Wood