[Cite as *Gillum v. Gillum*, 2011-Ohio-2558.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

DONA J. GILLUM (DAVIES)     :

  Plaintiff-Appellee     : C.A. CASE NO. 24401

v.               : T.C. NO. 02DR248

MICHAEL J. GILLUM      : (Civil appeal from Common
               Pleas Court, Domestic Relations)

  Defendant-Appellant    :

                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the   27th   day of    May   , 2011.

. . . . . . . . . .

H. CHARLES WAGNER, Atty. Reg. No. 0031050, 424 Patterson Road, Dayton, Ohio 45419
   Attorney for Plaintiff-Appellee

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 130 W. Second Street, Suite 840, Dayton, Ohio 45402
   Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1} Michael J. Gillum appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division, which denied his motion for a change of custody and found him in contempt for failure to pay his children's medical expenses. For the following reasons, the judgment of the trial court will be affirmed.

I

{¶ 2}   In 2002, Gillum and Dona Gillum Davies were divorced and entered into a shared parenting agreement for their three minor daughters.  Davies was designated as the residential parent, and Gillum visited with the children pursuant to the court's standard order.  In 2006, Davies moved to Georgia with the children, an Agreed Order was entered, and Gillum's visitation was modified to provide for substantial visitation during the summer and other breaks from school.

{¶ 3}   In April 2009, Gillum filed a Motion for Change of Residential Parent Rights due to Davies' alleged marijuana use and inadequate supervision of the children.  Davies subsequently filed motions to terminate the shared parenting plan and to show cause why Gillum should not be held in contempt for failure to pay the children's medical expenses, as ordered in the decree of divorce.  Davies sought sole custody.  A guardian ad litem was appointed, and he filed a report and recommendation with the court.

{¶ 4}   The magistrate held a two-day hearing in September 2010.[1]  The magistrate overruled Gillum's motion that he be designated as the residential parent and decided  to grant Davies' motion to terminate the shared parenting plan, naming Davies as the residential and sole custodial parent.  The visitation schedule remained the same.  Further, the magistrate decided that Gillum was in contempt for failure to pay medical expenses and should be sentenced to three days in jail, with the sentence suspended on the condition that he pay the amount owed, $396, within 30 days.  The magistrate also ordered Gillum to cooperate in executing a contract with the children's orthodontist for necessary services, that

---

[1]At the time of the hearing, the children were ages 15, 13, and 11.

the parties communicate directly (not through the children), that they notify each other in writing of vacation plans, that Davies successfully complete drug abuse counseling and submit to random urinalysis twice per year, and that Davies use a primary care or "treating physician" for the children's medical needs whenever possible.

{¶ 5} Gillum filed objections to the magistrate's order, contesting the magistrate's denial of his motion for change of residential parent's rights, the finding that it was in the children's best interest to continue to live with Davies, and the finding of contempt. The trial court overruled the objections and adopted the magistrate's decision.

{¶ 6} Gillum raises five assignments of error on appeal. As with his objections to the magistrate's order, Gillum's arguments challenge only the trial court's decision that Davies remain the residential parent and its finding of contempt; he did not object to the court's granting Davies' motion to terminate shared parenting, and he has not appealed that decision.

II

{¶ 7} Gillum's first four assignments of error assert that the trial court erred in placing too much or not enough weight on various factors relevant to the children's best interest. These factors are: Davies' use of marijuana, Davies' use of social networking sites on the Internet and her supervision of the children's use of such sites; the length of time the children have been in Davies' custody, and Davies' interference with Gillum's parenting time. We will address these arguments together because, individually and collectively, they challenge the trial court's conclusion that no change of custody was warranted.

{¶ 8} A court may not modify the designation of a residential parent and legal

custodian of a child in a shared-parenting decree without first determining that a "change in circumstances" has occurred and that the modification is in the best interest of the child. *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007-Ohio-5589, ¶33; *Sutton v. Sutton*, Montgomery App. No. 24108, 2011-Ohio-1439, ¶14. Such findings are compelled by R.C. 3109.04(E)(1)(a), which provides:

{¶ 9} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

{¶ 10} "* * *

{¶ 11} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

{¶ 12} In determining the best interest of a child, the court shall consider all relevant factors, including, but not limited to: the wishes of the child's parents regarding the child's care; if the court has interviewed the child in chambers, the wishes and concerns of the child as expressed to the court; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the mental and physical

health of all persons involved in the situation; the parent more likely to honor and facilitate court-approved parenting time or visitation and companionship rights; whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and whether either parent has established a residence, or is planning to establish a residence, outside this state.   R.C. 3109.04(F)(1).

{¶ 13} Although a trial court must follow the dictates of R .C. 3109.04 in deciding child-custody matters, it enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities.  *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74. Absent an abuse of that discretion, a reviewing court will affirm the custody determination of the trial court.   "Abuse of discretion" is a term used to indicate that a trial court's decision is unreasonable, arbitrary or unconscionable.  *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 219.

<u>Davies' marijuana use</u>

{¶ 14} Gillum contends that the trial court acted unreasonably in failing to protect the children from the potential harm posed by Davies' illegal drug use and in "fail[ing] to define" more specifically what would constitute the "drug treatment" required by its order.

{¶ 15} At the hearing, Davies admitted to occasional recreational use of marijuana in

her home, outside the presence of her children.   The children also reported this marijuana use to the guardian ad litem, who included it in his report.    Davies testified that she thought her children had been unaware of her marijuana usage because she had not used it in their presence.   She also testified that she had used marijuana recreationally for fourteen years, including during her marriage to Gillum.   She acknowledged that marijuana use was illegal in Georgia.   Davies also admitted that she had permitted her older son from a previous relationship to use marijuana in her home in 2009.   Davies testified that she recognized her marijuana use as a problem which set a poor example for her children and that she had stopped using it two and one-half months earlier, when she realized that her children were aware of it.   She also testified that she had sought help for her drug use through a program at her church called Freedom from Addiction.

{¶ 16} Although Gillum denied any recent marijuana usage, he testified that he had used marijuana "all the time" for many years, including during his marriage to Davies while the children were in the house.   He also testified that he had used marijuana with Davies' older son when the son was nineteen or younger.   Gillum stated that he had quit a couple of years earlier.

{¶ 17} Thus, it was undisputed that both parties had used marijuana – often while the children were at home – for many years.   Gillum stopped earlier than Davies but, at the time of the hearing, both parties claimed to no longer use marijuana.

{¶ 18} Gillum asserted that Davies' more recent marijuana use – and the children's awareness of it –  made it impossible for her to set a good example for the children or to properly supervise them.   But it was the trial court's responsibility to weigh the credibility of

Davies' claims that she had been unaware of her children's knowledge of her drug use and the sincerity of her resolution to stop using the drug. Moreover, in light of Gillum's admitted past use of marijuana with his teenage step-son and while his own children were in the home and the very contentious nature of the parties' relationship, the trial court could have reasonably questioned the sincerity of his concern over the issue. The court was required to balance its concern over Davies' drug use against other factors relevant to the children's best interest. Davies' past marijuana use, in itself, did not compel the conclusion that a change of residential parent was in the children's best interest. In its decision, the trial court ordered Davies to participate in and successfully complete drug abuse counseling and to submit to random urinanalyses at Gillum's request two times per year. The trial court did not abuse its discretion in addressing Davies' drug use in this manner, and it was not required to be more specific about the drug abuse counseling; the court had jurisdiction to impose a more specific requirement in the future if the counseling sought by Davies were not satisfactory.

<u>Use of social networking sites</u>

{¶ 19} Gillum contends that Davies' inability or unwillingness to adequately supervise the children is demonstrated by the children's postings on the social networking site myspace.com. He also claims that Davies showed disrespect toward him and set a bad example for the children by posting derogatory comments about him and his new wife on her own (Davies') myspace page, where they could be viewed by the children.

{¶ 20} Gillum testified that he thought several pictures posted on his daughters' myspace pages were inappropriate. The images to which Gillum objected included pictures

of the thirteen-year-old daughter kissing one of her girlfriends on the cheek and pictures of the fifteen-year-old wearing a bikini and cowboy hat at the beach. The pictures of the younger daughter and her friend included the daughter's captions such as "sexii" and "kisses;" the pictures of the older daughter included her captions such as "one sexii cowgirl" and "im the hottest cowgirl you've ever seen." Gillum contends that Davies' failure to object to the girls' posting of such pictures or her ignorance of this fact shows that she was not adequately supervising the children's Internet usage and that she was "in denial that child predators exist."

{¶ 21} Davies testified that there was "nothing wrong" with the pictures of the girls, that the pictures were not harmful, and that she did not consider the pictures "sexy poses." She also noted that the pictures of the older daughter on the beach were taken during a family vacation and that Davies herself was in some of the pictures with her daughter.

{¶ 22} Gillum also presented evidence regarding comments made on Davies' own myspace page and in emails to her children. The myspace entries included comments such as, "cannot wait to officially 'bury' the past trash" and "if I wanted to look like u, I'd stand in the road and b hit by a truck." Davies denied that these comments were directed at Gillum or his wife. Davies admitted that, in other myspace posings, she had directed comments toward Gillum and his wife such as, "ur fat, he's ugly, so keep it," "dust off ur own Bible, find out what scriptures fit u the best.... besides anything about 'GLUTTONY' cause we all know ur sinners in that area," and "I hope ur ready for an awakening teehee." Davies acknowledged that her daughters could have seen these pages, although there was no direct evidence that they had. Davies testified that she thought it "was okay to talk about [Gillum]

in that manner" on her myspace page because she felt that she "needed to let them [the children] know that [she] was going to do whatever [she] could to protect them from his badgering" about scripture and their behavior.

{¶ 23} Gillum also presented messages Davies sent to the children through her myspace page while the children were visiting him over the summer. These messages referenced "the 'talks'" the girls "had to have" (with Gillum, allegedly about the Bible) and encouraged the girls to "stay strong, and stay in the truth;" the messages also stated that Davies was "worried about the stuff that is being put into ur ears" and that she wouldn't be surprised if Gillum sent messages to her under the girls' names to create trouble. At the hearing, Davies explained that she had been concerned about Gillum's talking badly about her to the children; she denied trying to influence what they would say when they were interviewed by the guardian ad litem.

{¶ 24} Gillum argues that the "sexually exploitive" photos posted on his daughters' myspace pages and the derogatory comments posted on Davies' page were inappropriate and that, based on this evidence, the trial court should have changed custody of the children.

{¶ 25} As we noted above, the trial court is charged with weighing many relevant factors in determining whether a change of custody is in a child's best interest. R.C. 3109.04(F)(1). The magistrate and judge apparently determined that the use of myspace by the children and by Davies in this case was not so serious or offensive, in itself, as to compel the court to change the custodial parent. Evidence was presented that Davies required the children to follow rules, closely supervised their activities, and insisted on meeting any friends (and their parents) with whom the children spent time. Gillum admitted, on

cross-examination, that the children were safe with Davies. Moreover, other evidence raised questions about Gillum's own supervision of the children when they were with him over the summer, including admitted instances in which the fifteen-year-old was attacked with rocks and spent a significant period of time on public streets in her bikini because she could not get a ride home from the pool. Although the wisdom of allowing Internet posts of a bikini-clad girl or of young girls kissing is certainly problematic, Gillum's characterization of the photographs as "sexually exploitive" is also debatable. The magistrate and trial court, as is unfortunately often the situation, had to weigh this and other conflicting evidence. Viewing the evidence as a whole, the trial court did not abuse its discretion in finding (implicitly) that the danger posed by such postings and Davies' knowledge of or failure to prevent such postings did not demonstrate that a change of custody was in the children's best interest.

## Length of time in Davies' custody

{¶ 26} Gillum claims that the trial court erred in relying on the magistrate's recommendation "that the children not be forced to change primary residence which would include a change of households, states, school friends, and all of their activities." He contends that the magistrate's and court's concern over this issue ignored the fact that the children had lived in Ohio and spent summers here in the past. In other words, Gillum suggests that a change in the custodial arrangement would not have placed the girls in a "new atmosphere" or presented difficulties for them and, thus, should not have been viewed as a factor weighing against a change of custody.

{¶ 27} Gillum's focus on how familiar the children are with Ohio and how easily the children might adjust to a change of custody is misdirected. A court must find that a

"change in circumstances" has occurred and that the modification of the children's custody arrangement is in the children's best interest. R.C. 3109.04(E)(1)(a); *Fisher,* 116 Ohio St.3d 53, at ¶33. The children's familiarity with an alternate placement does not establish either of these factors. Without evidence to support a change of custody based on the best interest of the children, the trial court did not err in concluding that the harm likely to be caused by a change of environment was outweighed by the advantages of the change, if any.

<u>Interference with parenting time</u>

{¶ 28} Finally, Gillum claims that the trial court did not give sufficient weight to evidence that Davies interfered with his parenting time by taking the children on vacation during his parenting time. He criticizes the trial court for not "chastising" Davies and for commenting that "these are the kind of conflicts that the court expects the parties to discuss and work out because they may well occur an equal number of times for each parent."

{¶ 29} Davies testified that the trip in question, at the beginning of the summer in 2008, involved her parents' invitation for Davies and the children to go to Florida with them for a relative's graduation. She testified that the trip delayed the start of Gillum's summer visitation by three days, but that she offered to add three days at the end of the summer. Because of the nature of the event, Davies could not change the timing, and she testified that she believed Gillum had consented to the schedule adjustment.

{¶ 30} We agree with the trial court that schedule flexibility is to be expected and encouraged. The slight change in the visitation dates and the reasons for it were heard by the court and factored into its decision.

{¶ 31} The trial court did not abuse its discretion in concluding that there had not

been a change of circumstances warranting a change in the custodial parent and that such a change was not in the best interest of the children.

{¶ 32} Gullim's first, second, third, and fourth assignments of error are overruled.

III

{¶ 33} In his fifth assignment of error, Gillum contends that the trial court erred in finding him in contempt for failure to pay medical expenses related to the children. He claims that he did not receive the bills for some services and that Davies over-utilized expensive emergency care rather than taking the children to a "regular doctor."

{¶ 34} At the hearing, Gillum expressed concern that Davies over-utilized urgent care services, but he also testified that he refused to pay some medical expenses because he was "blown away" when he saw a picture on the Internet of Davies' son in her house with marijuana. Gillum also admitted that he had not contacted the children's orthodontist to arrange a payment plan, as he had been asked to do. He did not present specific evidence to substantiate his claim that urgent care services had been used in situations where a routine doctor's visit might have sufficed.

{¶ 35} There was evidence that Gillum's refusal to pay was motivated by more than a failure to realize that monies were owed. Moreover, in her order finding Gillum in contempt, the magistrate noted that there was no court order preventing Davies from using urgent care, so Gillum did not have a basis for refusing to pay his share of these expenses. The magistrate did incorporate into the order, however, a recommendation that, in the future, Davies use a treating physician unless there was an emergency.

{¶ 36} An appellate court may only reverse a trial court's finding of contempt when

there has been an abuse of discretion. *Ahmed v. Ahmed*, Montgomery App. No. 23740, 2010-Ohio-5635, ¶31. The trial court did not abuse its discretion in finding Gillum in contempt, especially considering that it gave Gillum 30 days to purge the contempt by paying the amount owed.

**{¶ 37}** The fifth assignment of error is overruled.

IV

**{¶ 38}** The judgment of the trial court will be affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

H. Charles Wagner
James R. Kirkland
Hon. Timothy D. Wood