[Cite as *Gessner v. Gessner*, 2017-Ohio-7514.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| PHILIP GESSNER | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2017-CA-6 |
| | : | |
| v. | : | Trial Court Case No. 2012-DR-375 |
| | : | |
| KELLY GESSNER nka THOMAS | : | (Domestic Relations Appeal) |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of September, 2017.

. . . . . . . . . . .

JOHN A. HERNDON, Atty. Reg. No. 0067284, 121 South Market Street, Troy, Ohio 45373
    Attorney for Plaintiff-Appellee

JAY M. LOPEZ, Atty. Reg. No. 0080819, 18 East Water Street, Troy, Ohio 45373
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Kelly Gessner nka Thomas appeals from a judgment amending the shared parenting plan entered into by Thomas and her ex-husband, Plaintiff-Appellee, Phillip Gessner. According to Thomas, the trial court erred in finding that there had been a change of circumstances since the prior order. Thomas also contends that the trial court erred in finding that a modification to the prior order was in the best interest of the parties' children.

{¶ 2} We conclude that trial courts do not need to find a change of circumstances in considering modification of parenting time under R.C. 3109.04(E)(2)(b). However, even if a change of circumstances were required, the trial court did not abuse its discretion in finding that a change of substance occurred. Finally, the trial court did not abuse its discretion in concluding that the increase in Gessner's parenting time was in the children's best interest. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} In October 2012, the trial court filed a judgment decree of dissolution and judgment decree of shared parenting, approving a shared parenting plan entered into by Thomas and Gessner for the care of their two minor children, B.G. and D.G. When the decree was filed, B.G. was four years old, and D.G. was six years old. The plan provided that both parents would share the permanent custody, care, maintenance and control of their minor children, and would have equal rights and responsibilities. Both parents were also designated as residential parents for purposes of school placement.

{¶ 4} Gessner was given parenting time on Tuesdays and Thursdays from 3:00

p.m. to 8:00 p.m., and on alternating weekends beginning on Friday at 5:00 p.m. and ending on Sunday at 5:00 p.m. Gessner was also given other parenting time as the parties mutually agreed. The parenting plan additionally provided for summer vacation parenting time and for specific holiday parenting time.

{¶ 5} At the time, the parties had nearly identical incomes, and no spousal support was awarded. In addition, a deviation was made in child support, with no child support obligation being designated. This was based on the equal amount of time Gessner would spend with the children and his payment of one-half of the child-related expenses set forth in the parenting plan. These expenses included sports fees, school fees, band/chorus fees, employment-related child care, and various other expenses.

{¶ 6} The parenting plan contained a somewhat unusual payment system in which the parties were required to exchange a detailed accounting of expenses and supporting documentation each month on the 5th day of the month. After documentation was exchanged, the party who had paid less expenses would be required to reimburse the other party on or before the 12th of the month. The plan further stated that:

> Prior to either party incurring expenses for the parties' children, each parent shall consult the other in order to mutually agree and set financial boundaries and expectations. Each parent acknowledges that one parent's monthly budget may not be as flexible as the other parent's monthly budget and the parent's [sic] shall communicate with the other prior to certain expenses being incurred for their children. In the event the parties cannot mutually agree on certain expenditures for their children, the best interest of the children shall be given consideration.

Doc. # 4, p. 9.

{¶ 7} Subsequently, in January 2016, an attorney for the Miami County Child Support Enforcement Agency (MCCSEA) submitted the matter to the trial court for review of a recommendation for administrative modification of a child support order issued by MCCSEA. The review was requested by Gessner, who had been ordered to pay a total of $676.76 per month, plus a 2% processing fee, for child support when health insurance was being provided. According to the paperwork, Gessner's yearly income was $49,121, and Thomas's income was $61,671.

{¶ 8} The trial court set a hearing for March 15, 2016, and then continued the hearing to May 10, 2016. On May 6, 2016, Gessner filed a motion to amend the parenting plan and consolidate this motion with the child support issue. Gessner proposed that he be allowed the following parenting times: every Tuesday beginning at 3:00 p.m. and concluding on Wednesday morning at 8:00 a.m.; every Thursday beginning at 3:00 p.m. and ending on Friday morning at 8:00 a.m.; alternating weekends beginning on Friday at 5:00 p.m. and ending on Monday at 8:00 a.m. In addition to the above time, Gessner asked for increased parenting time during the summer.

{¶ 9} The trial court appointed a guardian ad litem (GAL) for the children on May 16, 2016, and subsequently set a final hearing for September 16, 2016. At the hearing, which was before a magistrate, the parties presented testimony from the GAL, Thomas, and Gessner. The GAL had also previously filed a report on August 1, 2016.

{¶ 10} After hearing the testimony, the magistrate issued a decision finding a change in circumstances and also concluding that modification of the parenting plan was in the children's best interest. The magistrate recommended that Gessner have

parenting time during the school year on Tuesdays from 4 to 8:00 p.m., on Thursdays from 4:00 p.m. to Friday at 8:00 a.m., and from Thursday at 4:00 p.m. to Sunday at 6:00 p.m. on alternate weekends.   During summer break, Gessner would be entitled to parenting time on Tuesday at 4:00 p.m. to Wednesday at 8:00 a.m., on Thursday at 4:00 p.m. to Friday at 8:00 a.m., and on alternating weekends from Thursday at 4:00 p.m. to Monday at 8:00 a.m.

{¶ 11} The magistrate further recommended that Gessner pay $717.36 in child support, and that Thomas would now be responsible for school fees and expenses, as well as expenses related to sports, school, and community activities.

{¶ 12} Both parties objected to the magistrate's decision, and filed supplemental memoranda after the hearing transcript was filed.   The magistrate also filed an amended decision.   Subsequently, on February 21, 2017, the trial court issued a decision adopting in part and modifying in part the amended magistrate's decision.    Specifically, the court overruled Thomas's objections to the modification of parenting time, and decreased Gessner's child support obligation to $606.90 per month, plus a 2% processing fee.

{¶ 13} A judgment entry reflecting the court's decision was filed on March 24, 2017, and Thomas timely appealed from the judgment.   Gessner did not appeal.


II.   Did the Trial Court Err in Finding a Change of Circumstances?

{¶ 14} Thomas's First Assignment of Error states that:

The Trial Court Erred in Finding There Has Been a Change of Circumstance Since the Prior Order.

{¶ 15} Under this assignment of error, Thomas contends that there was no change

in circumstances other than an increase in the children's ages, which is insufficient to justify modifying the parenting plan. Notably, the case before us does not involve a change in custody; instead, it concerns only minor adjustment of parenting time.

{¶ 16} R.C. 3109.04(E) contains various provisions pertaining to modification of shared parenting plans. R.C. 3109.04(E)(1)(a) states that:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
>
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
>
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
>
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 17} This statute also provides other ways to change an existing decree. For example, R.C. 3109.04(E)(1)(b) allows a prior decree allocating parental rights to be changed to a shared parenting plan upon the motion of one or both parents, where the court finds that modification is authorized under R.C. 3109.04(E)(1)(a).

{¶ 18} R.C. 3109.04(E)(2) contains two additional methods that can be used to modify shared parenting plans. The first method is found in R.C. 3109.04(E)(2)(a) and allows modification by agreement of both parents. The second method is found in R.C. 3109.04(E)(2)(b).

{¶ 19} This second method provides, in pertinent part, that:

*In addition to a modification authorized under division (E)(1)* of this section:

* * *

(b) *The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree* upon its own motion at any time if the court determines that the modifications are in the best interest of the children *or upon the request of one or both of the parents under the decree.* Modifications under this division may be made at any time. *The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.*

(Emphasis added.) R.C. 3109.04(E)(2)(b).

{¶ 20} As a result, modifications under R.C. 3109.04(E)(1)(a) require both a change in circumstances and a best interest evaluation, while modifications under R.C.

3109.04(E)(2)(b) require only an assessment of the children's best interest.

{¶ 21} In 2007, the Supreme Court of Ohio issued a decision in *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546.   Since that time, Ohio appellate districts have been divided on the question of whether modification of parenting time requires a showing of a change in circumstances.

{¶ 22} *Fisher* considered a certified conflict concerning whether " 'a change in the designation of residential parent and legal custodian of children [is] a "term" of a court approved shared parenting decree, allowing the designation to be modified solely on a finding that the modification is in the best interest of the children pursuant to R.C. 3109.04(E)(2)(b) and without a determination that a "change in circumstances" has occurred pursuant to R.C. 3109.04(E)(1)(a).' "   *Id.* at ¶ 2, quoting the question certified by the Third District Court of Appeals.

{¶ 23} In *Fisher,* the parties had originally entered into a shared parenting agreement providing shared custody and equal sharing of parental rights and responsibilities.   After both parties moved to become sole residential parent and legal custodian of their child, the trial court terminated the shared parenting plan and designated the mother as the residential parent and legal custodian.   *Id.* at ¶ 3.   In doing so, the trial court used a best interest analysis, but did not analyze whether a substantive change in circumstances had occurred.   *Id.* at ¶ 4.

{¶ 24} After the father appealed, the Third District Court of Appeals noted varying approaches to whether modifications should be analyzed under R.C. 3109.04(E)(1)(a) or R.C. 3109.04(E)(2)(b), and concluded that courts could modify terms of shared parenting plans under R.C. 3109.04(E)(2)(a) on their own motions or at a party's request, as long

as the modification was in a child's best interest. *Id.* at ¶ 8. The Third District then "examined the definition of 'terms' in R.C. 3109.04(E)(2)(b) to determine whether a change in the residential parent and legal custodian of a child qualified as a 'term' of a shared-parenting plan." *Id.* at ¶ 9.

{¶ 25} Ultimately, the Third District concluded that " 'the General Assembly's use of the word "terms" in R.C. 3109.04(E)(2)(b) shows its intent to allow trial courts to modify all provisions incorporated in a shared parenting plan.' " *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 9, quoting *Fisher v. Hasenjager*, 168 Ohio App.3d 321, 2006-Ohio-4190, 859 N.E.2d 1022, ¶ 36 (3d Dist.). The court of appeals, therefore, held that "the trial court was permitted to modify the shared-parenting plan with respect to the residential parent and legal custodian of the child under R.C. 3109.04(E)(2)(b) * * *." *Id.*

{¶ 26} When the Supreme Court of Ohio considered the certified question, it disagreed. After analyzing the pertinent statutes, the court stated that:

> In summary, R.C. 3109.04(E)(1)(a) expressly provides for the modification of parental rights and responsibilities in a decree. An allocation of parental rights and responsibilities is a designation of the residential parent and legal custodian. Therefore, R.C. 3109.04(E)(1)(a) controls when a court modifies an order designating the residential parent and legal custodian.
>
> While the designation of residential parent and legal custodian can be modified under R.C. 3109.04(E)(1)(a), that designation cannot be modified under R.C. 3109.04(E)(2)(b), which allows only for the modification

of the terms of a shared-parenting plan.

*Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 26-27.

{¶ 27} After making these statements, the court considered the distinction between a " 'plan' " and a " 'decree.' "   *Id.* at ¶ 29-30.   In this regard, the court noted that "[w]ithin the custody statute, a 'plan' is statutorily different from a 'decree' or an 'order.' "   *Id.* at ¶ 29.   The court then stated that:

An order or decree is used by a court to grant parental rights and responsibilities to a parent or parents and to designate the parent or parents as residential parent and legal custodian.

However, a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement. R.C. 3109.04(G).   A plan details the implementation of the court's shared-parenting order.   For example, a shared-parenting plan must list the holidays on which each parent is responsible for the child and include the amount a parent owes for child support.

A plan is not used by a court to designate the residential parent or legal custodian; that designation is made by the court in an order or decree. Therefore, the designation of residential parent or legal custodian cannot be a term of shared-parenting plan, and thus cannot be modified pursuant to R.C. 3109.04(E)(2)(b).

*Fisher* at ¶ 29-31.

{¶ 28} After making these observations, the court focused on the difference in standards used in R.C. 3109.04(E)(1)(a) and R.C. 3109.04(E)(2)(b).   In this regard, the

court stressed that:

> To read both sections, with different standards, to apply to a court's analysis modifying the decree modifying a child's residential parent and legal custodian would create inconsistency in the statute. Two different standards cannot be applied to the same situation.
>
> Modification of a prior decree, pursuant to R.C. 3109.04(E)(1)(a), may only be made "based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to shared parenting decree, and that the modification is necessary to serve the best interest of the child." *This is a high standard, as a "change" must have occurred in the life of the child or the parent before the court will consider whether the current designation of residential parent and legal custodian should be altered. Conversely, R.C. 3109.04(E)(2)(b) requires only that the modification of the shared-parenting plan be in the best interest of the child.*

(Emphasis added.) *Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 32-33.

{¶ 29} Finally, the court commented that:

> The standard in R.C. 3109.04(E)(2)(b) for modification of a shared-parenting plan is lower because the factors contained in a shared-parenting plan are not as critical to the life of a child as the designation of the child's residential parent and legal custodian. The individual or individuals

designated the residential parent and legal custodian of a child will have far greater influence over the child's life than decisions as to which school the child will attend or the physical location of the child during holidays. Further, *factors such as the physical location of a child during a particular weekend or holiday or provisions of a child's medical care are more likely to require change over time than the status of the child's residential parent and legal custodian*.

(Emphasis added.) *Fisher* at ¶ 36.

{¶ 30} As was noted, after *Fisher* was decided, appellate districts have disagreed about whether changes in amounts of parenting time are terms of a shared parenting plan subject to modification under the lesser "best interest" standard used in R.C. 3109.04(E)(2)(b), rather than the "change of circumstances" standard in R.C. 3109.04(E)(1)(a). *See Ramsey v. Ramsey*, 10th Dist. Franklin No. 13AP-840, 2014-Ohio-1921, ¶ 32-40. *Ramsey* rejected the view of the Ninth District in *Gunderman v. Gunderman*, 9th Dist. Medina No. 08CA0067-M, 2009-Ohio-3787, and agreed with the decisions of the Third and Fourth Districts in *Picciano v. Lowers*, 4th Dist. Washington No. 08CA38, 2009-Ohio-3780, and *Sanders-Bechtol v. Bechtol*, 3d Dist. Hancock No. 5-08-08, 2009-Ohio-186. *Ramsey* at ¶ 37-40. The Tenth District, therefore, agreed that "the best interest standard in R.C. 3109.04(E)(2)(b) controls the analysis of the change in parenting time, not the change in circumstances requirement of R.C. 3109.04(E)(1)(a)." *Ramsey* at ¶ 38, citing *Picciano* at ¶ 24.

{¶ 31} In *Gunderman*, the Ninth District Court of Appeals concluded, conversely, that "a request for a change in parenting time is a request to alter the physical control of

the child and thus constitutes a request to modify the allocation of parental rights and responsibilities." *Gunderman* at ¶ 23. Consequently, "when a party files a motion to modify parenting time under a shared parenting plan, the party is seeking a reallocation of parental rights and responsibilities issued under a prior order or decree as opposed to a change in a term of the parties' shared parenting plan" and "the motion must be considered under R.C. 3109.04(E)(1)(a)." *Id.*

{¶ 32} Other appellate districts have adopted positions consistent with the Third, Fourth, and Tenth District Courts of Appeal. *See Lake v. Lake*, 11th Dist. Portage No. 2009-P-0015, 2010-Ohio-588, ¶ 70 (" 'allocation of parenting time is a 'term' of a shared parenting plan, which is modifiable if the change is in the children's best interests.' "); *Murphy v. Murphy*, 1st Dist. Hamilton No. C-130229, 2014-Ohio-656, ¶ 38 (under *Fisher*, "child support is among the many terms of a shared-parenting plan, and may be modified by the court sua sponte under R.C. 3109.04(E)(2)(b) upon a finding that the modifications are in the best interest of the children"); *Kovach v. Lewis*, 5th Dist. Ashland No. 11-COA-018, 2012-Ohio-1512, ¶ 26 (same holding as *Lake*); *Fritsch v. Fritsch*, 1st Dist. Hamilton No. C-140163, 2014-Ohio-5357, ¶ 20-21 (following *Picciano* and concluding that the trial court properly applied the best interest test in R.C. 3109.04(E)(2)(b) "to modify the designation of the residential parent for school purposes"); and *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 42-45 (modification of residential parent for school purposes is evaluated only under "best interest" test).[1]

---

[1] The Eighth District has used a somewhat hybrid approach, finding that R.C. 3109.04(E)(1)(a) applies where a "modification involves a substantial change in parental rights * * *," but that R.C. 3109.04(E)(2)(b) applies where the modification is not substantial. *Berger v. Feng*, 8th Dist. Cuyahoga No. 96513, 2012-Ohio-1041, ¶ 30. However, *Berger* cited a pre-*Fisher* case and did not mention *Fisher.* This approach is

**{¶ 33}** Research indicates that we have not considered this specific point after *Fisher* was issued. We did mention *Fisher* in a case involving a modification of residential parent status, where the parents lived in separate states, but we did not discuss *Fisher* in detail, nor did we consider whether parenting time is a "term" of a parenting plan under *Fisher*. We simply noted *Fisher's* holding "that a court may not modify the designation of a residential parent and legal custodian of a child in a shared-parenting decree without first determining that a 'change in circumstances' has occurred and that the modification is in the best interest of the child." *Sutton v. Sutton*, 2d Dist. Montgomery No. 24108, 2011-Ohio-1439, ¶ 14.

**{¶ 34}** Likewise, we have cited either *Sutton* or *Fisher*, or both, in a number of cases relating to a "change of circumstances" analysis, but have never engaged in the analysis of parenting as a "term." *See Montei v. Montei*, 2d Dist. Clark No. 2013-CA-24, 2013-Ohio-5343, ¶ 21 and 26 (citing both *Sutton* and *Fisher* in case involving motion to modify shared parenting plan and cross-motion to terminate parenting plan and obtain sole custody of child ); *Walton v. Walton*, 2d Dist. Montgomery No. 26841, 2016-Ohio-436, ¶ 10 (citing *Sutton* only and not mentioning *Fisher* in case involving request to modify school district, health care costs, and provision of health care insurance); *In re A.P.*, 2d Dist. Champaign No. 2012-CA-18, 2012-Ohio-4965, ¶ 7 (in case involving motion to change designation of residential parent, citing *Sutton* but not *Fisher*, for the proposition that "a court may not modify the designation of a residential parent for school purposes under a shared-parenting plan without finding that a change in circumstances has occurred and that such modification is in the best interest of the child"); *Gillum v. Gillum*,

inconsistent with the analysis in *Fisher*.

2d Dist. Montgomery No. 24401, 2011-Ohio-2558, ¶ 8 (applying both *Sutton* and *Fisher* in case involving motion for change of custody); *In re Z.B.*, 2d Dist. Champaign No. 09-CA-42, 2010-Ohio-3335, ¶ 31 (citing *Fisher* and "change of circumstances" in case involving motion to change residential parent and legal custody); *Sheppeard v. Brown*, 2d Dist. Clark No. 2007-CA-43, 2008-Ohio-203, ¶ 1 (citing *Fisher* in case involving motion to change custody); *Bell v. Bell*, 2d Dist. Clark No. 2007-CA-9, 2007-Ohio-6347, ¶ 12 and 27 (citing *Fisher* in case involving motion for change of custody); *Thomas v. Thomas*, 2d Dist. Clark No. 2009-CA-88, 2011-Ohio-2977, ¶ 29 (citing *Fisher* in case involving change of custody).

{¶ 35} In short, we have never analyzed *Fisher* in connection with the appropriate statutory basis for considering a motion for modification of parenting time. On consideration, we agree with the majority of appellate districts that modification of parenting time, as opposed to modification of residential parent and legal custodian, should be evaluated under R.C. 3109.04(E)(2)(b), and a showing of "change in circumstances" under R.C. 3109.04(E)(1)(a) is not required. Our decision is based on several factors.

{¶ 36} First, *Fisher* clearly indicates that R.C. 3109.04(E)(1)(a) applies to motions to change the designation of residential parent and legal custodian. Typically, this arises when a parent wishes to change legal custody or become the sole residential parent and legal custodian rather than sharing custody. Applying a higher standard in such situations makes sense, because changes in custody are significant and can greatly affect children. They should be subjected to a high standard.

{¶ 37} As an additional matter, when *Fisher* discussed the distinction between

legal custody (part of a "decree") and matters like parenting time (part of a parenting "plan"), the court referred to R.C. 3109.04(G).  *See Fisher*, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, at ¶ 30 (noting that "a plan includes provisions relevant to the care of a child, such as the child's living arrangements, medical care, and school placement.  R.C. 3109.04(G).  A plan details the implementation of the court's shared-parenting order.")  In *Gunderman*, the Ninth District Court of Appeals did not mention this part of R.C. 3109.04.

**{¶ 38}** R.C. 3109.04(G) states that:

A plan for shared parenting shall include provisions covering *all factors that are relevant to the care of the children, including, but not limited to, provisions covering factors such as physical living arrangements*, child support obligations, provision for the children's medical and dental care, school placement, and the parent with which the children will be physically located during legal holidays, school holidays*,* and other days of special importance.

(Emphasis added.)

**{¶ 39}** The amount of time a child spends with each parent is encompassed within the meaning of a "physical living arrangement," and is, therefore, a provision or term in a plan for shared parenting under R.C. 3109.04(G).

**{¶ 40}** Finally, R.C. 3109.04(E)(2) provides two additional ways in which shared parenting plans may be modified.  Specifically, R.C. 3109.04(E)(2) begins with the phrase "[*i*]*n addition* to a modification authorized under division (E)(1) of this section [R.C. 3109.04] * * *."  (Emphasis added.)  If the standards in R.C. 3109.04(E)(1)(a) were

intended to apply to all motions to modify shared parenting plans, there would have been no need to authorize "additional" methods of modification in R.C. 3109.04(E)(2)(b), nor would there have been a reason to include a less stringent standard for evaluating these types of requests.

**{¶ 41}** The circumstances of the present case illustrate why a lesser standard is appropriate. Gessner's motion did not request a change in custody or legal status; instead, he asked for minimal increases in his parenting time. Gessner already had parenting time two nights a week from 3:30 p.m. to 8:00 p.m., and simply asked to keep his children overnight those evenings and take them to school or to their mother's home at 8:00 a.m. the following morning. Gessner also already had parenting time from Friday night to Sunday evening; again, he asked only to keep the children overnight on Sunday night and take them to school or to their mother's home at 8:00 a.m. Monday mornings.

**{¶ 42}** The final proposed change was for additional time during the summer (basically weeknights from 5:00 to 9:00), which was, in fact, a schedule the parties had followed on their own volition during the summer of 2013 or 2014.[2]

**{¶ 43}** While a change in circumstances does not have to be "substantial," it "must be a change of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). " 'The clear intent of [R.C. 3109.04] is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a "better" environment. The statute is an attempt to provide some

---

[2] The testimony was not clear about the year. The GAL stated that the summer deviation occurred in 2014, while Thomas stated that it was 2013. In any event, Thomas unilaterally decided to end the increased summer parenting time.

stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment.' " *Id.*, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

**{¶ 44}** A significant difference exists between motions for change of custody and requests for additional parenting time. Accordingly, the trial court was not required to consider whether a change in circumstances had occurred.

**{¶ 45}** However, even if the trial court were required to consider the point, we find no error. We review parenting decisions for abuse of discretion. *See, e.g.*, *Blessing v. Blessing*, 2d Dist. Montgomery No. 27353, 2017-Ohio-2878, ¶ 18. " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The Supreme Court of Ohio has stressed that "most instances of abuse of discretion will result in decisions that are simply unreasonable." *Id.* Furthermore, the court has said decisions are unreasonable if they are not supported by a "sound reasoning process * * *." *Id.*

**{¶ 46}** In the case before us, the trial court found a change in circumstances based on the following factors: the children had matured and had become more independent in the four years since the parenting plan was implemented; both boys shared Gessner's interest in certain activities, like camping, hunting, and fishing; Gessner had exercised additional parenting time with Thomas's consent; and both boys had told the GAL and Gessner that they wanted to spend more time with their father.

**{¶ 47}** According to Thomas, there has been no change in circumstances, and the current parenting schedule works well for the children. She further contends that the trial

court mischaracterized the children's wishes because the youngest child, at times, did not want to visit his father.

{¶ 48} We have reviewed the entire record, including the GAL's report, and the record supports the trial court's decision. At the time of the original decree, the boys were four and six years old. When the hearing on modification occurred, they were eight and ten years old. We agree that "[a] mere passage of time does not constitute a change of circumstances * * *." *Scarberry v. Scarberry*, 2d Dist. Clark No. 10-CA-0091, 2011-Ohio-2829, ¶ 13. However, the passage of time is sufficient when combined with other relevant factors, including a child's expressed wishes. (Citation omitted.) *Pellettiere v. Pellettiere*, 2d Dist. Montgomery No. 23141, 2009-Ohio-5407, ¶ 19.

{¶ 49} The children, particularly B.G., were quite young at the time of the original decree. When the children were interviewed by the GAL four years later, they both said they wanted to spend more time with their father. They told their father that, as well. Gessner also testified that the boys were getting more mature since the dissolution, and that he and the boys had many similar interests, including athletics, the outdoors, fishing, and hunting. In concluding that circumstances had changed, the magistrate noted these facts. Magistrate's Decision and Permanent Order/Judgment Entry, Doc. #37, p. 3. After reviewing the record, the trial court agreed with the magistrate.

{¶ 50} We defer to trial court findings because a " 'trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Davis,* 77 Ohio St.3d at 418, 674 N.E.2d 1159, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 51} Both parties indicated that initially, B.G. gravitated more toward his mother, but even Thomas admitted that B.G. was currently a lot more willing to spend time with his father and brother. And, as noted, B.G. told the GAL that he wanted to spend more time with his father. These factors indicate a change of substance since the original decree.

{¶ 52} Accordingly, the trial court did not abuse its discretion in concluding that a change in circumstances had occurred. The First Assignment of Error, therefore, is overruled.

III.   Was Modification of Parenting Time in the Children's Best Interest?

{¶ 53} Thomas's Second Assignment of Error states that:

The Trial Court Erred in Finding that a Modification to the Parenting Time Schedule Was in the Best Interest of the Minor Child.

{¶ 54} Under this assignment of error, Thomas contends that the trial court erred in concluding that modification was in the children's best interest. Thomas focuses on the fact that the children were doing well, on her own fears that the children might not get sufficient sleep at Gessner's home, on B.G.'s alleged lack of desire to go with his father, and on Thomas's testimony that there were times when homework had not been done while the children were at Gessner's home.

{¶ 55} R.C. 3109.04(F)(1) provides a non-exhaustive list of factors that trial courts are to use in deciding a child's best interest. As pertinent to this case, the factors include:

(a) The wishes of the child's parents regarding the child's care;

* * *

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor * * *.

{¶ 56} The magistrate carefully reviewed these factors and found that "[q]uite clearly, it is in [the children's] best interest to modify the shared parenting plan to provide more parenting time for Phillip * * *." Magistrate's Decision and Permanent Order/Judgment Entry, Doc. #37, p. 7. The trial court agreed when it overruled Thomas's objections. Again, we review decisions on "best interest" for abuse of discretion. (Citations omitted.) *Brown v. Brown*, 2d Dist. Champaign No. 2012-CA-40, 2013-Ohio-3456, ¶ 12. After reviewing the record, we find no abuse of discretion.

{¶ 57} The record indicates that Gessner wants to spend additional time with the children, and Thomas is opposed to any change in the schedule. Additionally, the testimony and GAL report reveals that the children have close relationships to both parents and have a good relationship with their stepfather. The children are well-

adjusted to their community. Notably, while the parents live fairly near each other, Gessner lives only a few blocks from the children's school. There are no significant issues with the children. Despite Thomas's concern about whether schoolwork is being done at Gessner's home, both boys have maintained very good grades, and they are involved in a number of sports activities.

{¶ 58} The magistrate noted that no one had chronic mental health or physical problems that would impact parenting time. This conclusion is supported by the record, which indicates that the only mental health issue involved minor counseling for D.G., to address emotions related to the end of his parents' marriage. D.G. did tell the GAL that he wished his parents would stop fighting.

{¶ 59} The parental conflict primarily appears to have been over finances, which should be resolved by the trial court's decision to award a sum certain for child support and end the vast majority of sharing expenses for the children, which necessitated monthly exchanges of expenses and receipts. However, Thomas did have a tendency to make unilateral decisions about the children, such as deciding to restrict Gessner's summer visitation after allowing him additional time previously, or enrolling the children in an expensive sports activity without getting Gessner's agreement. On the other hand, Thomas complained about instances in which Gessner had been disrespectful to her in front of the children.[3] The parties are reminded that using " 'children as pawns in a war between divorced and embittered parents * * * has no victors and the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other.' " *Greenlee v. Greenlee*, 2d

---

[3] Thomas did not mention anything like this to the GAL, however.

Dist. Montgomery No. 26059, 2014-Ohio-2306, ¶ 36, quoting *Bell v. Bell*, 2d Dist. Clark No. 97-CA-105, 1998 WL 288945, *1 (June 5, 1998).   (Other citation omitted.)

{¶ 60} The most important factor is the wishes of the children.  While the magistrate did not interview the children, the GAL did, and stated that both children wanted additional time with their father.

{¶ 61} From this perspective, we note that the trial court only minimally increased Gessner's parenting time.  Gessner was given an additional overnight stay for the children during the school year on Thursdays, but only on alternate weekends when he had the children for the weekend.  He was also given an occasional extension of parenting time on Sunday evenings to Monday mornings, when the Monday following his weekend was a day off from school not designated in the plan's holiday schedule.   The court also gave Gessner additional minimal time during summers, when he was permitted to have the children from Thursday evening to Monday morning on alternate weeks.

{¶ 62} These minimal increases address Thomas's stated concerns about homework and getting the children to bed on time on school nights.  Specifically, Gessner would have the children overnight on school nights only a few times per month.  Under the circumstances, we cannot conclude that the trial court's decision was unreasonable, arbitrary, or capricious.

{¶ 63} The remaining pertinent factor addresses child support payments.  No child support was previously ordered.  As was noted, the parties experienced conflict over shared expenses, and neither party was completely blameless.   However, this issue was addressed by removing the sources of conflict.

{¶ 64} After reviewing the entire record, we conclude that the trial court did not

abuse its discretion by finding that a modification of parenting time was in the children's best interest.   Accordingly, the Second Assignment of Error is overruled.


IV.   Conclusion

**{¶ 65}** All of Thomas's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . .


HALL, P.J. and DONOVAN, J., concur.


Copies mailed to:

John A. Herndon
Jay M. Lopez
Hon. Christopher Gee